LEWIS SCOFIELD, plaintiff in error, *vs.* WILLIAM MC-NAUGHT, administrator, defendant in error.

1. Where the vendee of property is to pay his vendor ten per cent. on the purchase money until it is settled in full, under the name of rent, such contract is usurious upon its face.

2. A obligates himself to convey to B certain property for $7,000 00, ten per cent. on the purchase money to be paid in semi-annual installments, as rent, until settled in full. During the war B transfers said obligation to C for a valuable consideration. A sues B, and recovers judgments for the amount due on the same, with interest on the entire sum at ten per cent., and on each semi-annual installment, from the time it became due, at seven per cent., and levies on the property, having first filed a deed. C files his bill denying that there is as much due as the executions call for, pays what he considers the correct amount, and prays an injunction. The court charges the jury that the contract between A and B was not usurious:

*Held,* that such charge was error, for it excluded from the consideration of the jury the question whether the value of the property transferred by B to C was sufficient, in good money, at the time of the transfer, to cover the amount then due for it to A, including usury. If it was, then C has no equity which would entitle him to be relieved against the usury. *Aliter,* if the property was valued upon a Confederate basis, and was insufficient for the purpose indicated.

TRIPPE, J., dissented.

Equity. Vendor and purchaser. Landlord and tenant. Usury. Interest. Judgment. Before Judge HOPKINS. Fulton Superior Court. April Term, 1873.

For the facts of this case, see the opinions.

D. F. & W. R. HAMMOND, for plaintiff in error.

ROBERT BAUGH; L. E. BLECKLEY, for defendant.

WARNER, Chief Justice.

This was a bill filed by Lewis Scofield against William Mc-Naught, administrator of L. Windsor Smith, to the April term, 1870, of Fulton superior court.

The bill sets up that on the 4th day of April, 1861, N. E. Gardner bought of said Smith, then in life, a certain parcel of land in said county, describing the same, under the following agreement in writing, a copy of which was attached as an exhibit to the bill, to-wit:

" This agreement made at Atlanta, Georgia, this 4th day of April, 1861, between L. Windsor Smith and N. E. Gardner, witnesseth, that in consideration of the purchase money and rents hereinafter mentioned, the said Smith 'covenants with the said Gardner, his heirs and assigns, as soon as the said purchase money and rents shall be fully paid, to convey to him, or them, by a good warranty deed the title to all that parcel of land in the city of Atlanta, lot one, block nine, of the Mitchell tract, so called, and bounded as follows : Commencing on the northwesterly line of Whitehall street, fifty-two feet from Hunter street, and running back parallel with that street to the back line of the said lot two hundred and ten feet, more or less, thence parallel with Whitehall street, southwesterly fifty-three feet; thence parallel with Hunter street, towards Whitehall street, one hundred and twenty-six feet; thence parallel with Whitehall street, southwesterly one foot; thence parallel with Hunter street eighty-four feet, more or less, to Whitehall street; and thence fifty-four feet to the place of beginning, together with all the rights, privileges and appurtenances, rents hereafter accruing, and all erections and improvements thereon thereto belonging. And in consideration of the above, the said Gardner agrees to pay to the said Smith, his heirs or assigns, as purchase money for the said premises, $7,000 00 on the fourth day of January next ; and he also agrees to pay to the said Smith, his heirs or assigns, as his tenant of the said premises, until the said purchase money, without interest, and such rents, shall be

Scofield *vs.* McNaught.

fully paid; rents at the rate of $700 00, a year, in install-
ments of $350 00 at the end of each six months, until some
part of the said purchase money shall be paid, and thereafter
his rents shall bear the same ratio to the amount of the pur-
chase money unpaid, as seven hundred bears to seven thous-
and.  But the said Smith shall not be bound to accept any
payment, after the first, less than $500 00; and if proffered at
any time after the fourth day of January next, he shall be given
by the said Gardner six weeks notice of the same proffered
payment, and the said Gardner, his heirs or assigns, shall pay
all taxes and other legal charges on the said premises, and
sustain the loss of all accidents thereto or damages from what-
ever cause.

"The said payments shall be made in the city of Atlanta,
unless the said Smith, his heirs or assigns, shall direct them
to be forwarded elsewhere, in which case the expense of such
forwarding shall be borne by the said Smith.

(Signed)    ·    L. WINDSOR SMITH, [L. S.]
N. E. GARDNER,    [L. S.]"

On the back of this instrument were three receipts for
money, one by L. Windsor Smith, dated April 14th, 1861,
for $100 00; and one by William McNaught, administrator,
dated April 14th, 1862, for $690 00; and one for $500 00,
dated April 15th, 1862, signed by William McNaught, ad-
ministrator.

The bill further sets up that L. Windsor Smith died shortly
thereafter, and William McNaught was duly appointed his
administrator.  That after the death of said Smith and the
appointment of said McNaught, administrator, on the 20th of
May, 1862, the said N. E. Gardner sold to complainant,
Lewis Scofield, his interest in a portion of said lot for
$3,000 00, and represented that said McNaught would take
Confederate money for the balance, and obligated himself in
writing to comply with the terms of the agreement hereinbe-
fore copied.  The following is a copy of said writing, as set
forth as an exhibit to the bill:

"GEORGIA—FULTON COUNTY.

"For value received, I hereby transfer and assign all my right, title and interest in and to the above and foregoing agreement or contract, and the property thereby conveyed, so far as relates to fifty feet fronting on Whitehall street, and running back one hundred and forty-three feet, the said fifty feet front commencing fifty-two feet from Hunter street, the two store-houses on said lot being on said fifty feet front, and authorize and require said L. Windsor Smith, or his legal representative, to make the said Scofield a title to said fifty feet front, running back one hundred and forty-three feet, when said Scofield complies with the terms of said agreement or contract.                    "N. E. GARDNER.

"This 20th May, 1862."

On the back of this is the following receipt:

"Received of Lewis Scofield, assignee, $1,000 00, as part payment of the purchase money of the premises described in the within and foregoing contract.    This 11th November, 1865.        "WILLIAM McNAUGHT, *Administrator.*"

The bill further states that a short time after the close of the war said McNaught, as administrator, brought suits against said Gardner upon said contract, and obtained judgment upon the said rent obligation, as well as for the principal of said debt that remained due, the entire interest being computed on said obligation at ten per cent. per annum, with semi-annual rests, and the interest being computed at seven per cent. on each semi-annual payment as it became due, making the actual interest on said debt seventeen per cent. per annum; that said Gardner made no defense to said recovery, being unfriendly to complainant, and being himself insolvent, and colluded with the opposite party in order to get as large a recovery as possible against himself, and waived the stay law, in order to get the sheriff to sell said property; that said McNaught made and executed to said Gardner a deed and had it recorded, and then had said property levied on and ad-

vertised for sale, and claimant interposed a claim ; that short-
ly afterwards complainant withdrew his claim, and agreed for
the property to go to sale, and entered into the following writ-
ten agreement with said McNaught, administrator, a copy of
which is attached to the bill as an exhibit, to-wit:

" WILLIAM McNAUGHT, administrator L. WINDSOR SMITH,
deceased, *vs.* N. E. GARDNER, defendant, and LEWIS SCO-
FIELD, claimant.

" *Fi. fas., etc., from Fulton Superior Court.*

" Whereas, the above *fi. fas.* amounting to over $2,000 00,
have been levied for the purchase money upon the property
sold by said Smith to N. E. Gardner, which property was af-
terwards bought by Lewis Scofield from said Gardner, with
an agreement to pay off said Gardner's liability to said Mc-
Naught, administrator.    And, whereas, a difference of opinion
has arisen between said McNaught, administrator, and said
Scofield as to the legal liability of said Scofield as to the
amount he should pay.

" Now, the said Scofield agrees that he will bid said prop-
erty in when sold, taking the sheriff's deed thereto at an
amount sufficient to satisfy said contract, according to Mc-
Naught's construction thereof, and pay to the said McNaught,
administrator, the principal and lawful interest on said con-
tract, according to said Scofield's construction thereof, and the
difference between the two amounts shall remain open, bear-
ing interest until a suitable adjustment can be had by suit or
otherwise, which shall be immediately instituted, when the
said Scofield shall pay off whatever judgment shall be ren-
dered, and if none shall be, then the balance of said *fi. fas.*
shall be delivered up to said Scofield, satisfied or otherwise,
as he may require.

" In witness whereof we have hereunto set our hands and
seals, this the 6th day of July, 1869.

" WILLIAM McNAUGHT, *Administrator,* [L. s.]
" L. SCOFIELD,                              [L. s.]"

On the back of this agreement is the following receipt :

"$7,535 63.    ATLANTA, GA., July 6th, 1869.

"Received of Lewis Scofield seven thousand five hundred and thirty-five 63-100 dollars, the amount in full acknowledged by said Scofield to be due on this agreement, said McNaught insisting that there still remains due and unpaid 3,134 31-100 dollars.    "WM. McNAUGHT, Adm'r."

The bill further states that said McNaught brought a rule against the sheriff for the balance of the money which he claimed to be due; that said Scofield paid the amount of money specified in the above receipt, in full of principal and lawful interest due on said contract. The bill charged that the rent was not worth ten per cent. per annum on the purchase money agreed to be paid, and that the sale was made for $7,000 00 for the entire property, and defendant had no right under the contract or the law to claim more than that amount with lawful interest thereon. The bill further charged that the improvements on said property were old and not of much value.

The bill prays for the delivery up and cancellation of said executions, and for an injunction to restrain said McNaught from enforcing the same and from proceeding on said rule against the sheriff, and for subpœna.

The bill set out the said *fi. fas.* as exhibits. The injunction prayed for was granted.

The defendant, in his answer, admits everything stated and charged in the bill, the correctness of all the exhibits, etc., except he denies the charges of fraud and collusion, and that the contract set up in the bill between said Smith and said Gardner was usurious. Does not admit that the premises were not worth for rent what was contracted for; says they were worth it up to a fire.

The complainant introduced in evidence the contract between Smith and Gardner, and closed. The defendant introduced no testimony. After argument, the court charged the jury as follows: "The contract in evidence in this case between L. Windsor Smith and N. E. Gardner is in writing,

and it is the duty of the court to construe it.   It is not upon its face usurious, and if there be no other evidence before you as to its character, it would be your duty to find for the defendant.   You will find whatever amount the evidence shows to be due to the defendant as principal without any interest up to the date of the judgment obtained ᵣby L. Windsor Smith against N. E. Gardner, and with interest from that date at seven per cent. per annum.

"You will further find for the defendant whatever amount the evidence shows to be due for rent, computing on the principal sum due from said Gardner to said Smith at the same rate that seven hundred bears to seven thousand, and making it fall due semi-annually, up to the date of said judgment obtained by said Smith against said Gardner, with interest on each amount from the time it falls due."

The jury retired and found a verdict for the defendant against the complainant for $2,552 20 principal, and $684 85 interest.

The complainant moved for a new trial, on the ground that the court erred in charging the jury "that the contract introduced in evidence in said cause was not usurious, and the defendant was entitled to recover of complainant according to the terms of said contract."

The court overruled the motion, to which judgment of the court the complainant excepted.   The complainant also excepted to the entire charge of the court as above set forth.

1. The first question to be considered in this case, is whether the contract made by Smith and Gardner was usurious upon its face.   It is insisted that it was not usurious, because it was not for the loan of money, or for the forbearance to collect a debt.   The act of the General Assembly of 1845, which was the law of this state defining usury when the contract in question was made, declares, "That all contracts, bonds, notes, and assurances whatsoever, made after the passage of this act, by or with an incorporated bank, or any person or persons, whether natural or artificial, for the payment of any principal on money, goods, wares, or merchandise, or other

commodities whatsoever, to be lent, covenanted to be performed upon, or for any usury, whereupon or whereby there shall be reserved or taken above the rate of seven per centum per annum, shall be void and of no effect, except so far as to authorize the recovery of the principal due thereon, and no more:" *Cobb's Digest,* 393. Gardner purchased the property of Smith, and agreed to pay him therefor the sum of $7,000 00, on the 4th day of January, 1862, and also agreed to pay said Smith, as his tenant, until the said purchase money should be paid, rent at the rate of $700 00 a year, in installments, and the rent was to bear the same ratio to the purchase money unpaid as seven hundred bears to seven thousand, and said Gardner was to pay all taxes and other legal charges on the premises. purchased by him of Smith, and sustain the loss of all accidents thereto, or damages from whatever cause. Gardner, as the purchaser of the property, was to run all risk and damage to the property as the purchaser thereof, and pay Smith ten per cent. on the amount of the purchase price of the property, under the name of *rent,* and that is the sum and substance of the contract between the parties in relation to the time given by Smith to Gardner, within which the payment of the purchase price of the property was to be made. Although Gardner is called the tenant of Smith, he was not his tenant in contemplation of the law, and calling him tenant did not make him so. Where a party enters upon land under a contract of purchase the relation of landlord and tenant does not exist: *Brown vs. Persons,* 48 *Georgia Reports,* 60. Gardner had the use of the purchase money which he agreed to pay Smith for the property on the 4th day of January, 1862, until he paid it, and agreed to pay for the use thereof ten per cent. under the name of *rent,* and according. to the provisions of the act of 1845, before cited, it was usury apparent on the face of the contract; that is to say, such was its legal effect. Courts will not allow parties to evade the statute against usury, either directly or indirectly, by resorting to any trick or artifice for that purpose, especially when the intention is so patent on the face of the transaction,

Scofield *vs.* McNaught.

as in this case. The relation of landlord and tenant did not exist between the parties, and Gardner did not owe Smith any *rent*, as such. The ten per cent. on the amount of the purchase money which Gardner agreed to pay Smith for the property, was for the use of the money due therefor until paid, and calling it *rent* did not alter the legal effect of the transaction so far as the question of usury is concerned. In our judgment, the contract was usurious upon its face, and the court erred in charging the jury to the contrary thereof.

2. But, it is insisted, that notwithstanding the contract between Gardner and Smith may have been usurious, still, the complainant, Scofield, has no equity which will entitle him to any relief against the usury in that contract, for the reason that he has been paid by Gardner in the transfer of the property to him, to discharge that contract, including the usury. If the value of the property transferred by Gardner to Scofield, under the contract between them, was of sufficient value at that time in good money to have covered the amount then due for it, including the usury, then Scofield has no equity which would entitle him to be relieved against the usury ; for if Gardner paid him in property, at a fair valuation in good money at the time, to pay off the debt due for it, including the usury, then Scofield has not been hurt. But if the property which Gardner transferred to Scofield for the purpose of paying off that debt was valued upon a Confederate basis, then he has been hurt just to the extent of the difference of the value of the property in good money and its value in Confederate money at the time the contract was made between them, and that was a question which should have been submitted to the jury under a proper charge of the court. The charge of the court that the contract between Smith and Gardner was not usurious, necessarily excluded from the consideration of the jury the other facts in the case upon which the complainant's equity was based to be relieved from the payment of the usury.

Let the judgment of the court below be reversed.

McCay concurred, but furnished no opinion.

TRIPPE, Judge, dissenting.

Though there be usury in the contract between Smith and Gardner, yet, when Scofield purchased from Gardner, an allowance was reserved by him out of the price he was to pay for the lot for the purpose of discharging what Gardner owed his vendor, and he agreed so to do. With this agreement existing, and the amount reserved being in the hands of Scofield, Gardner permitted the judgment to go against him. In my opinion, Scofield cannot now set up the usury in the original contract with Smith, and thus leave a large portion of the judgment against Gardner to be paid by him. The purchaser from Gardner ought not thus to be allowed to avail himself of a statute not intended for his benefit, and to obtain an interest in land which his vendor never agreed or intended to transfer to him. Post *vs.* Dort and the Bank of Utica, 8 Paige' Chancery Reports, 639; Given *vs.* Kemp, 13 Massachusetts, 574; Morris *vs.* Floyd, 5 Barb. 130. These decisions fully sustain the foregoing position, and, besides, it is consistent with reason, justice and principle.

If there be any special equitable facts connected with Scofield's purchase from Gardner, which would entitle him to such a right, they should have been charged in the bill and proved at the trial. The mere statement in the bill that Gardner told complainant that his creditor would take Confederate money, is not sufficient. He does not state that he was thereby induced to give more than he otherwise would have promised, or that the price of the land was increased on account of its being estimated in that currency, nor how he was, or could have been, in any way injured by such a statement on the part of Gardner, nor does he charge that the statement was false, or fraudulent, or that he ever offered to pay the debt in Confederate money, or that he was notified it would not be received.

On the trial there was indeed no testimony, and none offered, that such a representation had ever been made by Gardner, nor does the answer of the administrator aid complainant.

Under the bill and the evidence, the case was simply that the complainant bought of Gardner nearly the whole of the lot, agreeing to pay, and reserving of the price he was to give, a sufficient amount to pay Gardner's debt. So far as it appears from the evidence, complainant asks that the property in his possession shall not be forced to pay the unpaid portion of the debt now in judgment against Gardner, thus leaving such portion open to be enforced out of Gardner, whilst he demands that he be allowed to retain the amount he reserved to pay the same.

Although the Court may have erred in its charge to the jury, that there was no usury in the contract between Smith and Gardner, yet, under the facts shown by the record, the complainant could not set up the usury, and the verdict being such as the jury would have been compelled to render under the evidence, I think the judgment should be affirmed.