WILLIAM T. WILKINSON, plaintiff in error, vs. SIMON WOOTEN, defendant in error.

1. When the object of parol evidence is to expose alleged usury covered up in writings under 'the name of rent, it is error for the court, in charging the jury, to disparage the parol evidence, and intimate that if there be conflict the written evidence should prevail.
2. When, at the instance of one in possession of land under bond for titles, a stranger advances money to discharge the balance due on the purchase, takes from the vendor a conveyance, and gives his own bond to make titles to the vendee, taking from the latter his note due at a future day, the transaction is *prima facie* a loan, in substance, with title to the land as security. An annual percentage on the amount advanced, though covered by separate and successive notes, and called rent, is not rent but interest, and if the per cent. exceeds the legal rate, the excess is usury.
3. If the original contract was thus usurious, all payments on the so-called rent notes are to be treated as payments on the debt itself, to go in reduction of principal and lawful interest, no matter when they were made, nor under what changes as to the law of usury. If, however, the original contract was untainted, and successive agreements for usury under the name of rent were superadded, each being independent of the others, then each is governed by the law of usury existing at the time it was made, and payments thereon in excess of the legal rate of interest can be applied to the orignal debt by plea of set-off only, which plea must be filed within the period of limitation applicable to an action for recovering back usury.

Charge of court. Evidence. Contracts. Usury. Vendor and purchaser. Landlord and tenant. Set-off. Before

Judge WRIGHT. Calhoun Superior Court. September Adjourned Term, 1876.

Reported in the opinion.

D. A. VASON; J. J. BECK, for plaintiff in error.

C. B. WOOTEN; L. D. MONROE, for defendant.

BLECKLEY, Judge.

The note sued upon was for six hundred dollars. It was dated January 9, 1872, and due by the 25th of December thereafter. It purported, on its face, to be given for purchase money of certain described land. There was a plea of "not indebted." Other pleas set up usury, and payment of the same, to the amount of five hundred and ten dollars. The pleas did not allege that the note was given for a loan of money, nor did they allege that there was usury in the note itself, or in the contract out of which it arose. They averred that the note was given "as a balance of purchase money to plaintiff," for the land described; and that "afterwards, to-wit: on the 19th of January, 1872, plaintiff required of, and received from, defendant, his additional note for the sum of $100.00 as rent for said land, so purchased, which rent was usurious interest at the rate of twenty per cent. on the purchase money of said land, and which usurious interest was, by defendant, paid to plaintiff. Also, on January 17, 1873, defendant likewise gave his note, claiming to be for rent, (which likewise was for usury,) in the sum of $120.00; and other usurious notes, to-wit: January 26, 1874, for $120.00; January 16, 1875, for $120.00; May 4, 1875, for $50.00, making, in the aggregate, the sum of $510.00, which was usurious and unlawful interest received by plaintiff of, and from, this defendant on the said case, to the account of purchase; and all of which amount defendant here claims to be allowed to him as set-off and as payment on said original note now sued on," etc. "The de-

fendant, for further plea in this behalf, says that he has partially paid off the original note, plaintiff's cause of action, as follows, to-wit: that he paid plaintiff, on 25th of December, 1872, the rent of $100.00; January, 1873, $120.00; January, 1874, $120.00; January, 1875, $120.00; November, 1875, $60.00, all of which said sums have been received by plaintiff, and of right ought to be entered as a credit and payment on said original note."

At the trial (the note declared upon being in evidence for the plaintiff) the defendant testified, in substance, that he purchased the land, in 1869, of one Clayton, at the price of $2,000.00, taking his bond for titles. A balance of the purchase money, amounting to $666.66 remained unpaid, and was due January 1, 1872. Clayton proposed to take $400.00 for this debt. Defendant agreed to give it if he could raise the money. He applied to plaintiff to borrow the amount. Plaintiff agreed to let him have it, but said he would take up the debt from Clayton, take a deed to the land, and give defendant a bond for titles, if defendant would pay him rent on it until the purchase money was paid—the rent to be twenty per cent. on the sum that defendant was to pay plaintiff for the purchase of the land; said he would not take any interest on the purchase money note, but that defendant must pay him twenty per cent. rent, as this was the only way he could collect his money. He also said defendant must pay him $100.00 for making the trade. These terms were agreed to, and defendant gave the note now in suit, which included the $400.00 paid Clayton, the $100.00 for making the trade, and $100.00 then loaned by plaintiff to defendant, out of which plaintiff retained $20.00 as per centage. On the 9th of January, 1872, plaintiff paid Clayton $400.00, took a deed for the land, and made defendant a bond for titles. The note was given on that day, and on the same day was given another note, for $100.00, the latter due at the same time as the former, (25th of December, 1872,) and expressed to be for rent. Subsequently, as called on by the plaintiff, defendant gave

him a note of $120.00 (being twenty per cent. on $600.00) for each year between 1872 and 1876. These, notes purported to be for rent, and, except the last, were all paid at or about maturity. The last note was renewed, and the renewal notes—one for $72.00 and one for $60.00—are still held by plaintiff. On cross-examination, defendant testified that he did not agree to pay rent for the land until the money was paid back, but only agreed to give his notes for twenty per cent. on the amount of the debt, and make it as rent, so as to comply with plaintiff's demand. All the notes were put in evidence, and also the bond for titles made by the plaintiff to the defendant. This latter stipulated for a quit-claim deed only. Clayton (introduced by plaintiff,) testified that he sold the debt of $666.66 to plaintiff for $400.00, received the money from him, and made him a deed. Did not remember that he ever agreed with defendant to take that sum for the debt, or that defendant ever said anything to him on the subject. The jury found for the plaintiff $742.00. The defendant moved for a new trial, for error in the charge of the court, in refusing to charge, and because the verdict was contrary to evidence, to law, and to the charge of the court. The new trial was refused, after the plaintiff had written off from the verdict $157.63. This refusal is complained of.

1. The court charged the jury that, "If written evidence of a transaction, made at the time, and parol evidence of the same transaction are in conflict, the written evidence is to be preferred to the recollection of a witness long after the transaction; and if it is possible for you to reconcile them so as both can stand as true, then the written evidence is not preferred—both are original evidence." Apply this charge to the so-called rent notes, and the jury would be apt to suppose that they proved rent, and that the parol evidence tending to show that the word rent was but a name to conceal usury, was to go for nothing. When the matter in hand is to strip off the paper covering in which usury is enveloped, if the words written on the paper are to have

37

more credit than the sworn testimony of witnesses, and this is matter of law to be given in charge to the jury, there had as well be no investigation further than to introduce the writings. Generally, the very object of the parol evidence is to produce conflict and make the writings yield. On which side is the truth, is for the jury to determine, taking all the evidence together, and ranking it as they think it deserves. For the misdirection of the court in this matter the judgment is reversed. 57 *Ga.*, 489.

2, 3. On the main case, we need do nothing more than announce the general views which we think must govern it. The plea and the evidence are not in full harmony. The plea indicates that the arrangements for rent were all subsequent to the main contract; the evidence, on the other hand, puts the root of all the notes in the original contract itself. In the head-notes, we deal with the subject in both aspects. We think that under 52 *Ga.*, 69, and *Archer vs. Underwood,* this term, the so-called rent was really interest. If, as the evidence says, the agreement was part of the original contract, the infection of usury went clear through. If, as the plea indicates, there was no usury until afterwards, each rent note is a separate contract, and whether usurious or not depends on the statutes in force at the time. But the notes two and three in the syllabus are sufficiently explicit.

Cited for plaintiff in error: 52 *Ga.*, 69; *Archer vs. Underwood,* this term; acts of 1871–2, p. 75; acts of 1873, p. 52; acts of 1875, p. 105.

For defendant: Tyler on Usury, 207; Comyn on Usury, 142, 143, 144; 8 *Ga.*, 113; 22 *Ib.*, 313; 31 *Ib.*, 140.

Judgment reversed.