WILLIAMS *vs.* THE GRIFFIN BANKING COMPANY.

1. A loan was made in 1873 at usurious interest.  Two notes were given, both infected with usury, one payable in October, the the other in November, 1873.  When they matured the usury laws had been repealed and had not been re-enacted.  The note first ma-

turing was paid at maturity, and when the other matured it was re. newed (without·purging) by a draft drawn and accepted by the debtor. In a suit upon the draft begun in 1877, the usury paid upon the note which was discharged was not matter of defense, either as payment or set-off. A like rule prevails as to usury upon a third note infected with usury, executed before but paid in 1873, after the usury laws were repealed.

2. Under the act of December 11th, 1871, where the contract made was for more than 10 per cent. interest, it was valid for that much. '

3. Where counsel for defendant in error concedes error on a material point, and calls for no decision upon that point, the supreme court will reverse the judgment with appropriate directions.

Usury. Practice in the Supreme Court. Before Judge SIMMONS. Pike Superior Court. April Term, 1879.

Reported in the opinion.

BOYNTON & DISMUKE, for plaintiff in error.

STEWART & HALL, for defendant.

BLECKLEY, Justice.

There were two suits by the bank against Williams, each upon a draft drawn and accepted by the debtor, and payable to the order of the creditor. The first suit was commenced on January 16th, and the second on March 20th, 1877; the former upon a draft for $378.85, dated December 21st, 1874, and due October 15th, 1875; and the latter upon a draft for.$711.35, dated November 15th, 1873, and due October 15th, 1874. Each draft stipulated for interest at 25 per cent. until paid, in case of failure to pay at maturity. The elder and larger draft had upon it two credits; one for $200.00, dated October 9th, and the other for $211.35, dated October 19th, 1874.

There was a plea to the second suit, with a prayer that both suits be consolidated, and that this plea operate in both. It alleged usury, averring that on January 3d, 1873, defendant borrowed of plaintiff $850.00, and gave his two

notes therefor; one for $534,75, due October 15th, 1873, which included $85.42 of usury; and the other for $548.30, due November 15th, 1873, which latter included $96.40 of usury; that the former was paid in full, and the latter was renewed by executing the elder and larger draft now in suit; that this draft has in it, as part of the principal, $225.82 of usury; that on February 3d, 1873, the defendant borrowed of the plaintiff $250.00, giving his note for $307.70, due November 1st, 1873, in which was included $44.68 of usury, which note was paid in full. The plea presents as a set-off the usury paid on the two notes, and also resists for usury the elder and larger draft, claiming that after deducting the $411.35 credited on the draft, the $85.42 of usury paid on the first note, the $44.68 of usury paid on the second note, and the usury embraced in the draft itself, the amount of the draft will be more than exhausted. The excess or overplus is set up as a payment on the younger and smaller draft.

Both suits were referred to an auditor, whose report was adverse to allowing anything on account of usury paid on the notes, or of usury in either draft. The auditor, moreover, computed interest on both drafts from their maturity, at the rate of 25 per cent.

In the argument here, the debtor conceded that the younger and smaller of the two drafts was free from usury; and the creditor conceded that the elder and larger was subject to be reduced because the note in renewal of which it was given was not purged when the draft was executed. Of course there is no occasion for this court to express its opinion upon matters in which both parties are agreed. The questions which remain for decision are, first, whether the usury paid on the two notes met at maturity is available as payment or set-off in this litigation; and, secondly, how interest ought to be computed on the loan of January 3d, 1873, in purging the note in place of which the draft was given by way of renewal, and how counted on the draft itself thus reduced in the principal sum.

1. Of the two usurious notes paid in full at maturity, one was dated January 3d, and the other February 3d, 1873 ; the former matured October 15, and the latter November 1st, 1873. They were both paid off more than three years before either of the present suits was begun, and both were paid voluntarily after the act of February 19th, 1873, went into effect. This act repealed all laws on the subject of usury ; and a previous act of December 11th, 1871, had limited suits for the recovery back of the usury paid to six months from and after the payment. The act of 1873 remained in force until February 24th, 1875, when the rate of interest was again regulated and restricted, and a provision against usury re-introduced in the law. Observe now that the drafts sued upon in the two actions which we are considering were both executed between the passage and repeal of the act of 1873. The plaintiff, therefore, does not come into court upon illegal contracts, but upon contracts perfectly legal. To this effect we have ruled several times. In *Houser vs. The Planters' Bank of Fort Valley*, 57 *Ga.*, 95, we said, on page 99, " In this promise there was nothing illegal, because there was no law against usury when it was made." In *Broach vs. Barfield*, *Id.*, 601, we took the same view. And so in *Ballard vs. The People's Bank*, 61 *Ib.*, 458; and *Taylor vs. Thomas*, *Id.*, 472. And if we had never taken it before, how could we help taking it now ? for no possible ingenuity of the human mind can make a contract illegal without some law to forbid it at the time it was executed ? While all laws on the subject stood repealed, how could anybody violate the law by contracting to take usury ? The plaintiff had made previous contracts to take usury which were illegal, but not one of these is brought into court as a ground of action. It is the defendant that attempts to bring them forward and use them as a means of defense, and this he does, as to two of them, more than three years after he had paid the usury which they embraced. In *Wilkinson vs. Wooten*, 59 *Ga.*, 584, the action was upon a contract made prior to the

act of 1873, and we held that if it, *the contract sued on*, was not infected, the notes given afterwards for usurious interest upon it would not taint it; but that if the plaintiff's suit was on a tainted contract he must account for subsequent payments no matter when made. And nothing to the contrary of what we ruled then and rule now appears either in *Candler vs. Corra*, 54 *Ga.*, 190, or *Archer vs. McCray*, 59 *Ib.*, 546. If the creditors' suits in these two cases were based on contracts made whilst the usury laws stood repealed, the reports do not show it ; and so important a fact would most probably have been stated if it had existed. Most certainly if it did exist, it must have been overlooked in adjudicating the cases, for it is contrary to all principle to hold that a legal contract is subject to the same defenses on account of usury previously paid as if it were illegal because of usury. The rule that the taint passes down through all renewals and contaminates each and every one, must be confined to renewals which take place whilst some usury law or other is in existence. If this were not so, at least in the view of this court, some of its best considered rulings ought at once to be reversed or abandoned. A renewal contract, though itself legal, must have some valid consideration for an undertaking to pay interest at any rate whatever for the past use of money, and we have held in 61 *Ga.*, 472, *supra*, that future indulgence for a definite time upon a debt passed due is such consideration. Whether we regard consistency with ourselves or with principle, we see not how to avoid ruling that neither as set-off nor as payment can the usury paid upon the two notes be applied to either of the two drafts, and we decide accordingly. When the usury was paid there was no law against promising, paying or accepting it.

2. The next question is easy of solution. We have only to consider what would have been the process of purging the note if that had been attempted when the draft was given in renewal, and what interest the draft would have borne if the intent of the parties had been fully expressed

on the face of the draft after this reduction of the principal. To purge that part of the loan of January 3d, 1873, which was originally secured by the note afterwards renewed by one of the drafts now in suit, all the interest in or on the note must be remitted except the highest rate of conventional interest then (at the date of the loan) allowed by law, which was ten per cent. per annum ; this rate counted on the cash for the loan of which the note was given, from the time of the loan till the time of the renewal, will fix the principal of the draft, with all usury cleaned off. The rate of interest specified by the draft itself is twenty-five per cent. per annum, and as there was no limit at all, except the will of the parties, when the draft was executed, that rate must govern from the date of the draft forward. The provisions of the act of December 11th, 1871, in respect to the rate of interest were, first, that a written contract to pay not exceeding ten per cent. per annum, shall be valid and binding, and may be enforced in the courts of this state ; secondly, that when the contract is silent as to the rate, seven per cent. only can be collected ; and, thirdly, "where a written contract is made to pay more than ten per cent. for the use of money borrowed, the lender shall not be entitled to recover more than ten per centum as interest on the sum lent." The words which we have put in quotation marks manifest, we think, by clear implication, a legislative intent not to cut down usury to the non-conventional rate, but only to the limit of the authorized conventional rate ; and it is on this construction that the mode of computation above presented is based, the act of 1871 being the usury law in force from its date down to the repealing act of 1873. We are of opinion, also, that it makes no difference whether the usury is blended with the principal of the loan, with no actual expression of the rate charged, or whether the true principal is stated separately and the rate mentioned in so many words. See *Tribble vs. Anderson,* 63 *Ga.,* 32.

3. The defendant in error, as already mentioned, having

by its counsel conceded error in the amount of the draft, and not called for any decision on that point, the judgment of the court below is reversed with directions to purge the draft of all excess by the method of calculation pointed out in the judgment of this court, which is in conformity to what has been set forth in the foregoing head of this opinion.

Judgment reversed, with directions.