CHARLES S. HEMPSTEAD, Respondent, v. THOMAS HEMPSTEAD'S ADMINISTRATOR *et al.*, Appellants.

*Release—Covenant not to sue.*—A judgment was rendered June 7, 1823, in favor of the United States against A and B upon an official bond, in which B was principal and A was security. B died, leaving a widow and a daughter, his only heir. Part of the judgment was levied of the property of A. C, being the owner of lands to which the heir of B set up a claim, obtained a transfer of the judgment from the United States, and procured a revival of the judgment against A and the administrator of B, in March, 1851. The revived judgment was allowed against the estate of B by the St. Louis Probate Court on June 15, 1852, for $84,772.34, and placed in the fourth class of claims. At the March term, 1852, of said court, a claim in favor of A was allowed against the estate of B for the sum of $10,244.67, and placed in the fifth class. A compromise was made between C and the heir of B, on December 7, 1849, and C made a covenant with the widow and heir of B, that he would not use the judgment against the estate and the lands descended, with the exception of the lands claimed and owned by C, and also reserved to himself the right to use the judgment against A and his property. Of this covenant A was cognizant, and by his agent made an agreement with C, and for the consideration of $4,000 C covenanted with A that he would not use the judgment against A, except to protect his title to the lands specified in the covenant with B's heir. By order of the Probate Court, the lands of B were sold, and at a final settlement there was a balance in the hands of the administrator of B, the proceeds of

Hempstead v. Hempstead.

lands not specified in the covenant, to the amount of $6,638.55, which the Probate Court ordered to be paid upon the claims allowed in the fourth class, which left nothing for the claim of A. A brought his suit, alleging that the covenant of C with the heir of B was a release of the judgment, which, by collusion and fraud between C and the administrator of B, had been fraudulently revived and allowed, and praying that the judgment of C might be postponed, and that the moneys in the hands of the administrator might be applied to the payment of the claim allowed in favor of A. *Held*, 1. That the covenant of C, with the widow and heir of B, was not a release of the judgment, and could not have been so pleaded. 2. That although A was a security, yet as he was cognizant of that compromise, and had himself made a similar arrangement with C, he had no equity which gave him a right to require that his claim should be preferred to the judgment of C. (See same case, 27 Mo. 187.)

## *Appeal from St. Louis Circuit Court.*

The finding of the court below is set out in the opinion. The deeds referred to, or covenants of Biddle with the heir of Thomas Hempstead, and the covenant with the plaintiff, were as follows:

" I, John Biddle, of Detroit, in the State of Michigan, hereby covenant and agree with Cornelia Hempstead, widow, and John D. Wilson and Cornelia V., his wife, (which Cornelia V. is child and sole heir of said Thomas Hempstead,) in manner following, that is to say: Whereas, I am the owner and assignee of a certain judgment, rendered in the United States District Court for Missouri, on the 7th day of June, in the year 1823, for the sum of $13,497.27, in favor of the United States, against Thomas and Charles S. Hempstead; and, whereas, I have compromised a certain suit in chancery, this day, wherein said John D. Wilson and wife and Charles Gibson are complainants, and myself and John O'Fallon are defendants, and they have quit-claimed all their right in the land in controversy in that suit, and agreed to dismiss that suit and a part of the consideration for such quit-claim and dismissal of said suit and release of their cause of action therein, is the release of the estate of said Thomas Hempstead from said judgment as hereinafter specified. Now, therefore, I hereby, for myself, heirs, representatives and assigns, agree and covenant that said judgment shall never

be used or enforced in any manner against the heirs or administrators of said Thomas Hempstead, unless for the purpose of affecting the two pieces of land of forty arpens and of five arpens hereinafter mentioned, nor against any property belonging to his estate, or to his heirs, as derived from him at any time, except, however, the tract * * * against which said two pieces of land, I reserve the right of using said judgment as I may see proper, and also of using the name of the heirs and representatives of Thomas Hempstead, deceased, for the purpose of selling, or otherwise affecting the same lands, but always at the proper cost of myself or my representatives. And I also have the right of using said judgment against Charles S. Hempstead and his property ; but, with the exception of the whole of the said forty arpens, and of the said five arpens, I am not to use or enforce said judgment, so far as the same can be made to affect the heirs, executors or administrators of the said Thomas Hempstead, or any property owned by them, or any of them, as such heirs, or executors, or administrators.

" In testimony whereof, I have hereto set my hand and seal, this 7th day of December, 1849.

JOHN BIDDLE, [L. S.]"

" This agreement, made between John Biddle, of Detroit, Michigan, of one part, and William Hempstead, of Galena, Illinois, of the other part, witnesseth, that the said William Hempstead agrees to pay said Biddle four thousand dollars, and in consideration of such payment the said Biddle covenants with the said William Hempstead, his executors, administrators and assigns, that a certain judgment rendered in the United States District Court for Missouri, on the 7th day of June, in the year 1823, in favor of the United States against Thomas Hempstead and Charles S. Hempstead, for the sum of thirteen thousand four hundred and ninety seven dollars twenty-seven cents, shall not be enforced against Charles S. Hempstead, or his representatives, or property, except so far as * * * which excepted parcels of ground said Biddle may use said judgment, and proceed in any man-

ner deemed advisable, in the name of Charles S. Hempstead as one of the defendants, or otherwise. The judgment aforesaid is now owned and controlled by the said John Biddle.

"In testimony whereof, the said parties have hereto set their hands and seals, this 22d day of December, 1849, to duplicates hereof.          JOHN BIDDLE, [L. S.]

                 WILLIAM HEMPSTEAD, [L. S.]"

*Glover & Shepley,* for appellants.

I. The plaintiff having failed to plead the release to the suit to revive the original judgment, is estopped from now setting up what should have been a matter of defence in that suit. (10 Mo. 382.)

II. After the revival of the judgment, the Probate Court was bound to allow it. (Wood et al. v. Ellis, 12 Mo. 616.)

III. There is no fraud shown of any kind. The deed was not a release of the judgment, nor was it so intended. The plaintiff knew of the arrangement, and made one of a similar character for his own protection. He has never paid the judgment, and is not injured by the use made of it.

*Jones & Sherman,* with *J. E. Munford,* for respondents.

I. The instrument of writing signed by Biddle was a release of the judgment in favor of the United States. (27 Mo. 188.)

II. The judgment having been released, the plaintiff was entitled to be paid his debt.

BATES, Judge, delivered the opinion of the court.

This case was before this court in 1858, and is reported in 27 Mo. 188. It was then remanded to the Circuit Court, where the plaintiff filed a supplemental petition stating that Wilson had made a final settlement of the estate of Thomas Hempstead, showing a balance in his hands, which had been ordered to be paid to creditors whose claims were in the fourth class, (that is, to John Biddle,) and charging that that settlement was fraudulent as to plaintiff.

The defendants answered the supplemental petition, deny-ing fraud, &c.

The case was then tried before the Judge of the Circuit Court, who gave a finding of facts and judgment as follows:

"Now at this day come the parties by their respective attorneys, and, waving a jury, submit this cause to the court upon the pleadings and proof, and the court having duly heard and considered the same, doth find—

"1. That on the seventh day of June, eighteen hundred and twenty-three, a judgment was rendered in favor of the United States against Thomas Hempstead and Charles S. Hempstead, the complainant herein, for the sum of thirteen thousand four hundred and ninety-seven dollars and twenty-seven cents, on the official bond of said Thomas Hempstead, wherein said Thomas Hempstead was principal, and said Charles S. Hemp-stead was security.

"2. That said John Biddle obtained the control and owner-ship of said judgment, with power to release the same.

"3. That said Thomas Hempstead died and left one child only, a daughter, his sole heir, Cornelia V. Hemp-stead.

"4. That said John Biddle, on the 7th day of December, 1849, for good and sufficient considerations, one of which was the withdrawal and dismissal of certain suits that had been instituted by the heir of Thomas Hempstead against the said Biddle and others, and the conveyance by the heir of Thomas Hempstrad to Biddle of two certain tracts of land, the sub-ject of said suit, released by instrument of writing the heirs, executors and administrators of Thomas Hempstead from said judgment, except so far as might be necessary to use it for the protection of the title to the land which Biddle obtained by said conveyance from said heir.

"5. That said release was never entered of record, but was kept by the agent of said John D. Wilson; that said John D. Wilson was advised by counsel, and believed, that the paper called release was no release at all, and acted upon such hypothesis.

" 6. That said judgment was kept afoot in fraud of the complainant in this cause.

" 7. That in the year 1848, said defendant, John D. Wilson, married the said Cornelia V. Hempstead, the said sole heir of Thomas Hempstead.

" 8. That, in June, 1850, letters of administration were granted to defendant Wilson, by the Probate Court in and for the county of St. Louis, State of Missouri, upon the estate of Thomas Hempstead.

" 9. That in the month of March, 1851, the said judgment against said Thomas and Charles Hempstead was revived in favor of the United States, to the use of said Biddle, fraudulently.

" 10. That said judgment so revived was presented in the Probate Court for allowance by the said Biddle; the same was fraudulently procured to be allowed, and was allowed on the 15th day of June, 1852, to the amount of $34,772.34, and placed in the fourth class of claims allowed against the estate of Thomas Hempstead, in fraud of the plaintiff's rights.

" 11. That at the March term, 1852, of said Probate Court, a claim was allowed by said court in favor of this complainant, Charles Hempstead, against the estate of Thomas Hempstead, amounting to $10,244.67, for money paid by this complainant upon the aforesaid judgment against said Thomas Hempstead and this complainant, and the said claim so allowed was placed in the fifth class of claims allowed against said estate of Thomas Hempstead.

" 12. That no other claims have been allowed against, nor are any other debts owing by, said estate than the said judgment and allowances.

" 13. That property to a large amount belonging to said estate of Thomas Hempstead came into the hands of said John D. Wilson, as administrator as aforesaid of said estate.

" 14. That said Wilson, as administrator as aforesaid, procured an order from the said Probate Court to sell real estate belonging to the estate of said Thomas Hempstead, and that at the December term, 1852, of said Probate Court, in pursu-

ance of said order, he sold such property, and recovered therefor the sum of $7,630; and that at the September term, 1855, of said Probate Court said Wilson sold the property belonging to said estate, for which he received the sum of $957.

"15. That nothing has ever been paid upon said judgment allowed in favor of said Biddle by said administrator of said estate.

"16. That at the March term, 1857, of said Probate Court, said defendant Wilson made a final settlement of his administrotion of the estate of said Thomas Hempstead, and that there remains in his hands $7,410.55 assets of said estate, of which sum $772 are the proceeds of sale of lands excepted in said instrument of release from the operation of said release.

"17. That there remains in the hands of the administrator, John D. Wilson, assets of the estate of Thomas Hempstead, the sum of $6,638.55, independent and exclusive of the proceeds of sale of said one by forty arpens of said land, and said one by five arpens of land, spoken of and excepted in said share.

"18. That the said Probate Court, at the time of said final settlement, ordered said Wilson to pay over said assets of said estate of Thomas Hempstead to the creditors of said estate whose claims had been placed in the fourth class of claims allowed against said estate.

"19. That said judgment allowed against the estate in favor of said Biddle is the only claim allowed in said fourth class, and is much more than enough to exhaust all the assets of the estate:

"Wherefore, it is ordered, adjudged and decreed by the court, that the order made by the Probate Court, in and for the county of St. Louis, directing said John D. Wilson, administrator of the estate of said Thomas Hempstead, to pay to the creditors whose claims allowed are placed in the fourth class the assets in his hands, be annulled, set aside and revoked, except the payment of $772; and it is further ordered, adjudged and decreed, that the judgment of $34,772.54 allowed

in favor of John Biddle, in the Probate Court in and for the county of St. Louis, against the estate of Thomas Hempstead, placed in the fourth class of claims allowed against said estate, be postponed to the claim allowed against said estate in favor of Charles S. Hempstead placed in the fifth class, and that the said Wilson be restrained from paying over any of the assets remaining and found in his hands at the time of said final settlement to said John Biddle, except said $772; and it is further ordered, adjudged and decreed, that said Wilson pay the said sum of $6,638.55 in payment of said claim and allowance of said Charles S. Hempstead, the complainant in this cause, so far as the same will go; and that the complainant have execution for the same and his costs."

When the case was here before, the only question was whether the court below properly rejected as evidence the paper supposed to be a release by John Biddle of a judgment of the United States against Thomas and Charles S. Hempstead, and this court held that the paper should have been admitted in evidence, upon the ground stated in Judge Scott's opinion that thereby the judgment was released, except so far as it might be necessary to use it for the protection of the title to the land which Biddle obtained by his compromise with the heir.

This result was attained by an equitable construction of the instrument in connection with the attending circumstances. In the case as now appearing in this court, the pleadings are somewhat changed, and facts are shown which do not appear by the report to have been known to the court when formerly considering the case, and we are therefore required to examine the whole case anew.

The plaintiff's claim is, that the judgment was released by John Biddle, and the court below has so found, except so far as it might be necessary to use it for the protection of the title to the land which Biddle obtained by conveyance from the heir of Thomas Hempstead.

The terms of the instrument show that it is not an absolute release, but the judgment was to be kept in life and force for

10—VOL. XXXII.

certain purposes, and the court below has found that the only exception to the release was for the protection of certain specific property, whilst the instrument itself declares that "I (John Biddle) have the right of using said judgment against Charles S. Hempstead and his property, but with the exception of the whole of the said forty arpens, and of the said five arpens, I am not to use or enforce said judgment so far as the same can be made to affect the heirs, executors or administrators of the said Thomas Hempstead, or any property owned by them, or any of them, as such heirs or executors or administrators." This exception is of the greatest importance, as it not only shows that the judgment was not released, but that the power was expressly retained to use the judgment against this very plaintiff, and so to use it as not to injure the heir or administrator of Thomas Hempstead. This may appear to have been very ungenerous in the heir of Thomas Hempstead who made the agreement with Biddle, but we are now regarding only the meaning of the paper itself, without regard to extrinsic facts.

Evidently this paper could not have been pleaded in bar of a revival of the judgment, and to call it a release is a misuse of the term leading to a confusion of ideas.

Discarding, then, the idea of a release of the judgment, we must still look to the instrument to ascertain its proper meaning and effect in reference to all the facts of the case and the persons affected by it.

It appears that Cornelia V. Wilson, the heir of Thomas Hempstead, was prosecuting suits against Biddle, and that Biddle had acquired the judgment of the United States against Thomas and Charles S. Hempstead, with the intention, it may be presumed, to use it in some way to defend or protect his title to the land for which he was sued by Mrs. Wilson, and that a compromise was made between them, and this instrument given by Biddle as a part of the consideration paid by him for the compromise. The paper was evidently intended only for the benefit of the heir of Thomas Hempstead, and the idea of any benefit to Charles S. Hempstead is expressly

excluded, and the paper is a covenant only not to use it to the detriment of the estate of Thomas Hempstead. It was a contract only between the parties to it, which they could act upon or not, or alter or rescind at their pleasure, and the plaintiff has no right to question their action, provided he be not injured or defrauded thereby. We must, therefore, inquire whether he has been injured or defrauded by the defendants. The Circuit Court has, in its finding of facts, found that the judgment was kept afoot in fraud of the plaintiff; that it was revived fraudulently, and that it was presented for allowance and allowed fraudulently. These findings of fraud were evidently based upon the erroneous notion that the instrument granted by Biddle was a release of the judgment for the benefit of ·Charles S. Hempstead; but even upon that idea the evidence does not justify the findings, for the plaintiff had knowledge of the arrangement, and his brother, acting as his agent, expressed himself well satisfied with it, and made with Major Biddle a somewhat similar arrangement, whereby, for the payment of four thousand dollars, Biddle bound himself not to use the judgment against his property, with certain exceptions. The court below found that the administrator, Wilson, was advised by counsel and believed that the paper called a release was no release, and acted upon that hypothesis. Wherein his fraud consisted, it is impossible to see. Either of the allowances to the plaintiff and to Biddle against the estate of Thomas Hempstead is more than sufficient to absorb the whole estate, and the debt to Biddle being by law of superior merit to that owing to Charles S. Hempstead has rightful priority, and until that was wholly paid the plaintiff could have neither legal nor equitable right to any part of the assets of the estate. If Mrs. Wilson has by contract with Biddle induced him to accept less than the full amount of his judgment, the plaintiff has no right to complain of it, for he is not thereby injured.

If no contract had been made with Biddle, certainly the plaintiff could get nothing from the estate of Thomas Hempstead until Biddle's claim was fully satisfied, and upon no

computation is it shown that the estate was sufficient to pay half of the debt to Biddle. He could have received nothing then, and there was, therefore, no possibility of his having been injured by the arrangement made between Mrs. Wilson and Biddle.

The judgment not being absolutely released at law, he can only claim that in equity and good conscience it should be postponed to his demand, and the case made does not show him entitled to such relief, for he is made no worse off by all that has been done. This is said without reference to the fact that he himself has procured Biddle's covenant not to use the judgment against his property. When this fact is considered, it would appear grossly inequitable to hinder Biddle from collecting what he can from the estate of Thomas Hempstead.

The judgment of the court below will be reversed and judgment rendered by this court for the defendants.

Judges Bay and Dryden concur.