DANIEL FRY, plaintiff in error, *vs.* HENRY D. SHEHEE, defendant in error.

1. Where the court charges the jury that if a purchaser from the mortgagor has *actual* notice of the mortgage, he takes his title subject to the incumbrance of the mortgage, and seven years possession of the premises will not give him a prescriptive title, and there is evidence tending to show actual notice, this court will not overrule the discretion of the court below in refusing a new trial on the ground that the verdict is contrary to the charge of the court, or to the law, or to the evidence.

2. In such a case, *actual* notice to the agent who purchases for the principal, is, in the sense of the law, *actual* notice to the principal.

3. Where the purchaser buys from the mortgagor, and his title is a deed from the mortgagor, with seven years possession of the land, and where the mortgage is legal and has been recorded within the time prescribed by law, the purchaser buys the title of the mortgagor incumbered with the lien of the mortgage. He does not hold adversely to the mortgagee, and no title by prescription is acquired by him so as to defeat the mortgage lien.

4. Where the court is requested by the claimant to deliver his charge in writing, and the plaintiff in execution makes certain requests in writing, and the court adds thereto orally, it is error; and where, in such a case, at the close of his charge, delivered in writing, the court, without the consent of claimant's counsel, superadds any remarks to the jury on the law of the case, this is also palpable error under our Code, and in all such cases a new trial will be granted, unless it plainly appears from the law and facts disclosed in the record that such new trial would not change the verdict.

5. Where interrogatories are taken without commission regularly sued out, under section 3891 of the Code, they need not show the residence of the witness; a substantial compliance with the general law is all that is neces-

Fry *vs.* Shehee.

sary, and if the answers be legal on other grounds than those which have reference to technical points of the execution of the interrogatories, they may be read to the jury.

6. If two sets of interrogatories be sued out for the same witness by the plaintiff, and one set be ruled out at the instance and on motion of the claimant, as illegally executed, and the other set be admitted as legal, the illegal set cannot be used by the claimant to contradict and impeach the witness; the testimony excluded as illegal for one purpose, on motion of the claimant, cannot be invoked by him as legal for another.

7. Counsel are required to know on what docket their cases are entered by the clerk, and an agreement by them and the court that the dockets shall be called and tried in a certain order—that is, the issue docket first, the equity next, and the claim last—furnishes no good reason why a claim case entered on the issue docket should be postponed to the claim docket, although the counsel announces that he is not prepared on the law and the testimony, in consequence of the case having been called for trial sooner than he expected, it appearing that said claim case formed an issue for trial and was entered on the issue docket and on no other.

8. Interrogatories sued out by claimant for the plaintiff with the usual questions, and not requiring the plaintiff to answer to his information and belief as well as knowledge, are well answered if the plaintiff answers as any other witness from knowledge; if the plaintiff desires to probe his conscience, as in a bill for discovery, he must ask him to answer to the best of his information and belief as well as his knowledge.

9. Where interrogatories are sued out for witnesses who do not answer as much as counsel expected them to answer from his knowledge of what they would testify, and the witnesses are not interrogated upon the only point which cannot be proved by other evidence, and all defects to the execution are waived by the other side, a continuance ought not to be granted; but if two witnesses resided in the county when subpœnaed and resided there when counsel last heard from them—his client being a non-resident, and counsel making the showing—and the testimony is material, the case should be continued.

10. It is not necessary to make the legal representative of the defendant to the mortgage *fi. fa.* a party to show payments on the *fi. fa.*, or fraud and collusion between a former administrator of the defendant and the plaintiff in regard to the *fi. fa.*, or the mortgage; the claimant, in the claim case between the plaintiff in the mortgage *fi. fa.*, and himself, may prove anything going to show that the execution is paid, or any part of it, and any fraud or collusion between the plaintiff and anybody, or any other equitable defense he may have, touching the mortgage and its interference with his claims to the land covered by it.

11. If it appear from the face of the execution that it is against the administrator, and not against the party individually, the *fi. fa.* is a good and valid valid process, though the little word, *"as"* be not prefixed to the word *"administrator."*

12. It is enough for the plaintiff in *fi. fa.* to introduce to the jury his *fi. fa.* without the petition and the rules *nisi* and absolute; the claimant may introduce the balance of the record, if he wishes to do so; and when the mortgage is also introduced, if the *fi. fa.* identifies it as that on which it is founded, the lien of the *fi. fa.* will relate back to the date of the mortgage.

13. The record of a mortgage made in time is notice to the world; its lien is good for twenty years, and it may be foreclosed at any time within that period; and if the purchaser of the land covered by such a mortgage, hold by title from the mortgagor, whether that title be from the state down, passing through the mortgagor, or by prescription, the mortgage is good for twenty years against such purchaser.

14. If the mortgagee indulges the mortgagor for a consideration until he becomes insolvent, such indulgence will make the purchaser's title good; but if, without any consideration, he indulges him, such indulgence, unless the facts show fraud, will not relieve the title of the purchaser from the encumbrance of the mortgage.

15. Although the court may commit error on legal points complained of, this court will not grant a new trial, where it plainly appears, from our view of the law and the portion of the evidence undisputed by the parties, that the verdict in any event must stand.

Prescription. Vendor and purchaser. Mortgage. Notice. Principal and agent. Adverse possession. Practice in the Superior Court. Charge of Court. Interrogatories. Evidence. Attorneys. Discovery. Continuance. Claim. Execution. Administrators and executors. Registry. New trial. Before Judge STROZER. Decatur Superior Court. November Term, 1874.

Reported in the opinion.

J. C. RUTHERFORD, for plaintiff in error.

BOWER & CRAWFORD; R. F. LYON, for defendant.

JACKSON, Judge.

Henry D. Shehee, in 1854, sold a tract of land in the county of Decatur to John P. Gaulden, and put him in possession thereof, taking a mortgage to secure the payment of the purchase money. John P. Gaulden sold this land in 1863 to Daniel Fry, who went into immediate possession, and held it

Fry *vs.* Shehee.

for more than seven years. Shehee foreclosed his mortgage in 1869, and execution issued thereon, and the execution was levied in November, 1870, more than seven years after Fry bought and went into possession. The mortgage was recorded on the day of its execution. When the levy was made, Fry claimed the land; the jury found it subject, and a motion was made for a new trial, on many grounds; the motion was overruled on all, and that refusal on all the grounds is assigned for error here.

1, 2. The first three grounds may be considered together. They are that the verdict is contrary to the law, the evidence and the charge of the court. It is not disputed that if Fry bought with actual notice of this mortgage, his seven years' possession, with deed from Gaulden, would not work a prescriptive title in him so as to defeat the mortgage. There is evidence enough in the record to sustain the verdict in this view of the law in our judgment. The brother of the plaintiff bought the land for him, and was informed of the incumbrance upon the land; it was his duty to inform his principal; his, the agent's, conscience was charged with this notice, and notice to the agent in the line of the business entrusted to him and within the scope of his authority, is notice to the principal. So that in this view of the law, even should we hold that in this case actual notice is necessary to charge the conscience of the purchaser, there is sufficient evidence to sustain the verdict as not being contrary either to the law or to the charge of the court, or to the evidence.

3. But we do not rest our judgment upon the application of the law to the facts of this case upon this legal principle which is conceded by the counsel for the plaintiff in error to be correct. We hold that no tenant of lands holding under the mortgagor, deriving his title from him, can acquire a prescriptive title as against the mortgagee, if that mortgage has been recorded within the time prescribed by law, and is valid and legal in other respects. It is true that this court has decided, in *Wright vs. Smith,* 43 *Georgia,* 292, and in *Garrett vs. Adrian,* 44 *Georgia,* 274, that where the same feoffor sells

land to A and B, and A has the older deed, and that deed properly recorded, and B has gone into possession, and held the land for seven years, exercising acts of ownership over it, B's prescriptive title is good against A's prior deed. The doctrine is that B must have actual notice, and the constructive notice of the record of A's deed does not affect B's conscience so as to make his adverse holding unconscientious and fraudulent against A. But in those cases B's possession is adverse to A; the titles of the two men are wholly in conflict; they both claim the absolute fee. The very moment B entered as landlord and set up ownership, A is notified that one is in possession of his land which he has bought; that he is not there as his tenant, but is on the land without his authority and holds adversely to him. Hence, the moment B enters thus, no matter from whom his deed comes to him, even though it be from A's feoffor, he holds adversely and his prescription begins, and if A let him remain in possession seven years uninterrupted, A's older and otherwise better title is destroyed by the new-born prescriptive title of B.

But a mortgagee has no title to land in Georgia. The title never passes out of the mortgagor into him. It remains in the mortgagor, and the mortgagee has a mere lien or security on the land for his debt. He has no right of entry. He cannot maintain ejectment, and as he cannot eject the person in possession of the land, it is difficult to see how that possession is adverse to him, and therefore how any prescriptive right can be acquired against him. When the mortgagor sells the land, he sells all the title he has. That title is the fee, but the fee encumbered by a security for debt, a lien or charge on the land for the purchase money in the case at bar, called a mortgage. The purchaser gets that title, but he gets it exactly as the feoffor had it—*cum onere,* encumbered by the mortgage. It is true, that this court, in the case of *Stokes, administrator, vs. Maxwell et al.,* 53 *Georgia Reports,* 657, held that the purchaser from a vendor other than the mortgagor and in possession of land seven years, acquired a prescriptive title against the mortgagee; but that case rests upon the principle that

such purchaser entered not under the 'title of the mortgagor, not as his vendee at all, but as the vendee of a stranger to the mortgagor, and therefore he enters adversely to the title of the mortgagor and the lien of the mortgagee, and holds adversely to both.   The title he has bought is not encumbered with the lien ; there is no privity between him and the mortgagee ; he buys free from all incumbrances and mortgages, and holds adversely to the mortgagor's title, its rights and appurtenances, liens, encumbrances and mortgages.   The court expressly says : " If it had been shown that Sutherland, and those under whom the claimant derives his title, had purchased the land from Gilbert, the mortgagor, subsequent to the date of the mortgage, then the claimant would have been a *privy* in the estate with the mortgagor, and have held the land subject to the mortgage, and could not set up a title by prescription as against that mortgage lien, for the reason that he went· into possession of the land under a title which was encumbered with that lien :" *Stokes, administrator, vs. Maxwell et al.*, 53 *Georgia Reports*, 657.   It is said that these words are *obiter dicta*, but they are not.   The whole question was discussed and decided, and it is the unanimous judgment of this court and binding upon us now.   If it were not, we concur in the principle of the decision, and would so hold the law for the reasons above given.   It seems to us quite clear that Fry bought the title of Gaulden ; he got that title ; he holds it now ; nobody disputes that the fee is as completely in him as it was in Gaulden ; every right that Gaulden had he now holds, and the only encumbrance upon his title is the mortgage lien or security for the purchase money which was given by Gaulden and inhered in the title which Fry bought.

4. The fourth and twentieth grounds of the motion for the new trial may also be considered together.   They are to the effect that after the judge had been requested to give to the jury his charge in writing, he added verbally to the requests of the plaintiff in *fi. fa.;* and also at the request of claimant or plaintiff (the judge says that he does not remember which) he added verbally to his written charge.   He was requested

by the *claimant* to put his entire charge in writing, and when he gave the written request of the *plaintiff* to the jury, and added verbal remarks to those requests, we think he erred; and when, at the request of somebody, he added to his charge by oral remarks to the jury without the assent of claimant's counsel, who had made the demand that the whole charge be put in writing, the error is palpable. Our Code is very plain. The judge is positively required to put his charge in writing on the demand of either party; and he is required *to file this written charge in office* for the inspection of all concerned. How can he file a written charge in office when a part of it only is written and the rest is in his memory? The great object of the statute is to prevent disputes between the judge and counsel as to what was the charge; and the only way to prevent them is to require the courts to conform rigidly to the statute. Indeed, the better practice would be for the judge to put every charge in every case of any importance in writing. It may be a little troublesome and laborious, but it would avoid much wrangling and controversy, and sometimes a good deal of hard feeling, and would make the practice more pleasant both for bench and bar, and insure fairness in exceptions and assignments of error here. This, however, is matter of taste and discretion; but when either party requires the charge to be given in writing, it then becomes matter of positive law, and it is error to make any portion of the charge orally. It is no reply to say that the oral charge was more favorable to the complaining party than to the other side. The oral charge, as certified by the court may be, but the question is, what was that oral charge? The court certifies one thing; the counsel maintains that it was another; the certificate of the judge rules in this court, and the whole benefit of this remedial statute is lost to the counsel: Code, sections 244, 245.

5. The fifth ground for new trial is that the court admitted the interrogatories of Drury Ranbo over the objection that they did not show the residence of the witness. The interrogatories were taken by consent under the act of 1873; the objec-

Fry *vs.* Shehee.

tion was not to any answer of the witness; and we think that they were properly admitted: Code, section 3891.

6. The sixth ground is that the court having, at the instance of claimant, ruled out another set for the same witness on the same ground, but where the interrogatories were sued out regularly under the general law, the court refused, after the argument had commenced, to allow the claimant to read them, thus ruled out, to contradict the statement of the witness in the other set. We think the court did right. Counsel for claimant should have examined both sets, and adopted his line of policy before he made his motion to rule out. At all events, it is difficult to see how illegal testimony becomes legal because it is offered to impeach a witness.

7. The seventh ground is that the court erred in forcing claimant to trial under these facts. It had been agreed by counsel, and assented to by the court, that the issue docket should be called first, the equity docket next, and the claim docket last; and counsel for claimant, living in Macon, was surprised when this case was called on the issue docket, and not ready for trial on law or facts. It appears that this case was on the issue docket—it seems to have been there for some time—it was the duty of counsel to have known where it was, and when he agreed to the order of trial he would have known when he would be required to meet this case. We see no error here.

8. The eighth ground is that the court overruled claimant's motion for a continuance. This motion was based upon four grounds: 1st. That the claimant had sued out interrogatories for plaintiff; that these interrogatories were in the nature of a bill for discovery, and were not fully answered. The questions were propounded in the ordinary way; the plaintiff was examined as an ordinary witness; he was not required to answer to the best of his knowledge, information and belief, as in an equity proceeding, and we think the motion was properly refused on this ground.

9. 2d. That he had sued out interrogatories for two of the brothers of claimant; that these were not fully answered,

and in this particular were defectively executed. The defect was waived by the plaintiff and the interrogatories read. The only material matter, which claimant wished to prove by these witnesses, in the view of the court below, was that the purchaser had no notice of the mortgage, and about that the witnesses were not questioned. The other facts were proven sufficiently by other witnesses, and no harm was done. Counsel, who made the motion, did not state the facts which he expected to prove as showing no notice. This ground was properly overruled.

3d. That two witnesses were absent, who lived in the county when subpœnaed, one of whom he knew was trying to rent land in the county the year of the trial, and, that so far as he knew, they were still in the county, and the evidence was material. We think the court erred in not continuing the case on this ground.

10. 4th. That Bruton, administrator of Gaulden, had died, and claimant wished to make the legal representative of Gaulden a party to get in an equitable defense that said Bruton had colluded with plaintiff to defraud claimant; that large sums had been paid by him to plaintiff, and never credited; that he had wasted the estate of Gaulden, etc., etc. We think the motion on this ground was properly overruled. We cannot see how the legal representative of Gaulden was a necessary party to enable claimant to put in this defense. He had the right to show, as the pleadings stood, any payments that ought to have gone on the *fi. fa.*; and any fraud of plaintiff with anybody, by which he was damaged as to this incumbrance upon his land.

11. The ninth ground is that the *fi. fa.* was against Bruton, administrator of Gaulden, and not *as* administrator of Gaulden, and the court erred in admitting it in evidence, as it thus, in law, was against Bruton individually, and not as administrator. The language of the *fi. fa.*, taking it altogether, shows that it must be an execution against Bruton as administrator, and the ruling of this court at this term in the case of *Jennings, administrator, vs. Wright & Company*, is to

the point that when such is the case, the omission of the little word "*as*," will not vitiate the process of the court.

12. The tenth ground is that the court erred in admitting the mortgage without the rule *nisi* and rule absolute. We think that the mortgage *fi. fa.* sufficiently identified the mortgage as that on which it was issued, and the *fi. fa.* was presumptive evidence that the foreclosure had been regular. If the claimant wished to show otherwise, he had the right to introduce the whole record.

13. The eleventh ground is that the court charged the jury that the record of a mortgage made in time is notice to all the world. We think the charge law.

So as to the twelfth ground. We think that the lien of a mortgage is good for twenty years, and that it may be foreclosed any time within that period, and that the court charged correctly.

As to the thirteenth ground, we think that if the mortgage execution sufficiently identifies the mortgage as its foundation the lien does relate back to the date of the mortgage, and we see no error in the charge to that effect.

The fourteenth ground, we think also untenable. The court charged to the effect that land held by perfect title from the state down or by prescription, may be subject to a mortgage, if the mortgage was made by the vendor under whom the tenant claimed title. We think the charge legal.

We see no error in the charge complained of in the fifteenth ground, "that actual notice of a mortgage lien created by the maker of the color of title, under which the claimant bases his prescription, will prevent any number of years' possession defeating said lien." We understand the court to mean within the twenty years that the mortgage is alive.

14. The charge complained of in the sixteenth ground is to the effect that if the creditor indulges the debtor, such creditor being mortgagor, and the debtor mortgagee, to the detriment of purchaser of mortgaged property for value, *for a consideration*, until the debtor becomes insolvent, it makes the purchaser's title good; but if the indulgence is without

consideration, it does not, unless the facts show fraud. We see no error in this charge.

The seventeenth ground relates to the verdict being against the charge, and has been already alluded to in the former part of this opinion. We see no error in the verdict. The same may be said of the eighteenth and nineteeth grounds. They relate to the law on the main question first decided, and need not be repeated.

15. In looking through this whole record, we see but two errors of the court, in our judgment; one, the giving his charge in part orally, when required to put the whole in writing, and the other the refusal to continue for the absence of the two witnesses subpœnaed. As, however, under the view of the law of the case we have taken, and the undisputed facts, the verdict must be what it now is, we do not grant the new trial, but affirm the judgment.

Judgment affirmed.