Lilienthal *vs.* Champion *et al.*

Levi Lilienthal, plaintiff in error, *vs.* Aaron Champion *et al.*, defendants in error.

1. If a mortgage, executed prior to June, 1865, be foreclosed prior to the first of January, 1870, and be active in trying to condemn some of the mortgaged property, it is not barred by the act of 1869, though it be not levied upon the particular property in the hands of a purchaser, and advertised for sale, and the purchaser notified thereof, until 1874.

2. The purchaser of part of the mortgaged property cannot complain of any disposition made of other portions thereof prior to the date of his purchase, the mortgage having been duly recorded.

3. The purchaser of property which is incumbered with a mortgage lien, who bought the whole title, and not the equity of redemption merely, *eo nomine*, and paid full price for the land, with no deduction of price on account of the mortgage, may set up usury in the mortgage, though the mortgage had been foreclosed as against the mortgagor, and the usurious interest had been paid before his purchase. Not being a party to the proceeding to foreclose the mortgage, he is not concluded thereby; nor is he concluded by the judgment rendered against the mortgagor on an affidavit of illegality. The equitable right of the purchaser to set up the usury in defense of his purchase in such a case, depends upon the price he actually paid—whether a fair and full price, without regard to the mortgage, was paid to the mortgagor, or a deduction was made on account of the mortgage—especially where the mortgagor and vendor is insolvent and has gone into bankruptcy.

Mortgage. Statute of Limitations. Usury. Equity. Before Judge Tompkins. Chatham Superior Court. May Term, 1876.

Reported in the opinion.

J. R. Saussy, for plaintiff in error.

S. Yates Levy, for defendants.

Jackson, Judge.

Wm. R. Symons, in 1853, executed a mortgage to Aaron Champion of lot twenty-four, in Chatham ward, Savannah, to secure the payment of $5,000.00. The debt carried on

Lilienthal *vs.* Champion *et al.*

its face ten per cent. interest, and the mortgage was duly recorded. Up to 1863 $5,000.00 of interest had been paid on the mortgage, and in 1869 and 1870, twenty-five hundred dollars more. By the sale of one tenement on the lot in 1875, Champion received $2,800.00 more. In 1863 Champion released another of the tenements on the lot from the mortgage, and did not record the release on the mortgage record. Afterwards, in the same year, 1863, Symons sold the remaining tenement, one-third of the lot, (there were three tenements, and equal divisions thereof,) to Kohn, who paid full price for it, and knew nothing of the existence of the mortgage—having no actual notice thereof, or of the release of the one-third—and Lilienthal derived title from him, paying also full price and without actual notice—and has been himself, and those from whom he claimed, in continuous possession since 1863. In 1868 Champion foreclosed this mortgage against Symons on two-thirds of this lot for the $5,000.00 of principal, and interest since 1863, and received the said sum of $2,500.00 on the mortgage *fi. fa.* in 1869 and 1870, as before mentioned. In 1871 Symons filed an affidavit of illegality to the *fi. fa.*, which was decided against him. Lilienthal, whose title deed is dated in 1866, and who was in possession from that date continuously himself, had no notice of these proceedings, nor of the incumbrance and foreclosure upon the third he had bought and possessed, until the third he so owned was levied upon in 1874; whereupon he filed this bill, and on the trial thereof the foregoing facts were admitted, as well as the bankruptcy of Symons, and the sale of one-third of the lot by the assignee, and the payment, in 1875, of the before mentioned $2,800.00, the proceeds of the sale, the said third having depreciated from $4,500.00, its former value, to $2,800.00 at the time of assignee's sale. So that it was admitted that the principal and legal interest has been paid, and more than paid, on the mortgage. The case was tried upon the foregoing admitted facts; the jury found, and the judge decreed, in favor of Champion's mortgage, authorizing its proceed-

ing to make the amount due thereon without any deduction for usurious interest; and to this decree Lilienthal excepted, and brought the case before us.

The questions made are first, that as the mortgage was never levied upon Lilienthal's land until 1874, the limitation act of 1869 bars the proceeding; second, that the release of one-third of the lot from the incumbrance of the mortgage, in August, 1863, discharged the third Lilienthal held title to, derived from Kohn's deed in November, 1863; and, third, that Lilienthal, being the purchaser, without actual notice of the mortgage, of the whole estate, and not of the equity of redemption merely, and he and those under whom he claimed having paid full value for the land without any deduction on account of the mortgage, is entitled to set up the usurious interest which Symons paid Champion from 1853 to 1863, it being admitted that no usury had been paid since. We proceed to consider these questions in the order named.

Some points were also made in respect to the laches of Champion, but we deem it unnecessary to touch them, as the mortgage was not barred by the general limitation act, and we hardly think that equity will adopt a shorter period. For several years during and after the war, the statute was suspended, and, counting those years out, Champion was in time, and seems to have been pressing for his money.

1. We cannot think that the act of 1869 bars the right of the mortgagee to enforce the collection of this money out of this piece of land. Though the purchaser had no actual notice of the mortgage, he took the land subject to its incumbrance, because it was recorded and he had constructive notice thereof. It was foreclosed in 1868 against this land, and though he was no party to the proceeding of foreclosure, yet it was properly brought against Symons, the mortgagor; money was paid upon the *fi. fa.* by Symons, in 1869 and 1870; the *fi. fa.* was levied on the whole two-thirds in 1871, and the morgagee was active in enforcing his lien upon the land mortgaged. Even as late as 1875 he pressed out of the assignee of Symons the proceeds of the sale of the other

third, and received $2,800.00 thereon. We do not think that the mere fact that Lilienthal had no notice of the foreclosure, or of the levy of 1871, and of Symons' illegality, will make the act of 1869 applicable as a bar; nor will the fact that he was only notified in 1874 of the levy on his third, and that then, and not till then, the *fi. fa.* was levied upon his third as a separate piece of property. It is true that the mortgage must have been foreclosed before the first of January, 1870, to prevent the bar of the limitation act of 1869 —54 *Ga.*, 462,—but it does not follow that the *fi. fa.*, after foreclosure, must be levied before that date even upon lands in the hands of a purchaser before the foreclosure. It was the business of the purchaser to watch the records, and he bought subject to the recorded mortgage. In *Williams & Company vs. Terrell*, 54 *Ga.*, 462, it was held, it is true, that a purchaser could defend, when his purchase was levied on, by showing that the mortgage was barred by the act of 1869, *at the time it was foreclosed*, although the mortgagor did not make the point when the proceeding to foreclose was tried; but it was not pretended that the *fi. fa.* must have been levied before January, 1870, and that the mortgagee was barred if it was not. We think there can be nothing solid in this defense.

2. Nor do we think that the release of one-third of the lot, *which was made before Kohn's purchase*, could, or ought to, effect Lilienthal, who bought in 1866, and held under Kohn. Certainly he can have no higher equity than Kohn, and Kohn, we think, bought too late to complain of the release Champion had previously made. The cases in 1st Johnson, Ch. 425, and 19th Pick., 238, cited by plaintiff in error, will be found to have been based upon a release made by the mortgagee after the purchaser had bought. He was then interested in the property mortgaged, and what was done with it concerned him; before his purchase he had no interest and could not, we think, be affected by the prior release.

3. It remains to consider the third ground on which com-

plainant relies, and that is the fact that this mortgagee has received more than his principal and legal interest on this mortgage from Symons, the mortgagor, and that it is inequitable and unconscientious for him to collect the remaining debt apparently due—which is all usury—out of this purchaser's land, who bought for full price the whole title, and without actual notice of the mortgage.

This fact makes this legal question: Can the purchaser of the whole estate, paying full value therefor, plead usury, which the mortgagor neglected to plead when the mortgage was foreclosed?

First, is he bound by the judgment of foreclosure? This court has held that the judgment of foreclosure does not conclude the purchaser. In *Williams vs. Terrell*, 54 *Ga.*, 463, the cases are all reviewed, and the judgment is distinctly pronounced that the purchaser is not concluded. Certainly upon principle it would seem that he ought not to be, unless he was made a party, or bought after the foreclosure, or at least had some notice of the proceeding to foreclose; nothing of the kind is pretended in this case. See, also, 55 *Ga.*, 208, and Code, §3965, which is conclusive.

But it is argued that the purchaser here is concluded by the illegality, which was tried in 1871. We cannot see in what way. He was no party, nor do we see how he could be made a party. So that not being concluded, the question remains: Can he plead the usury?

The general rule, unquestionably, is that usury is a personal privilege—a personal plea. The party himself can plead it, but no stranger can do so. But is this purchaser such a stranger that he cannot plead it? Numerous authorities have been cited by the plaintiff in error to show that he can plead the usury, and it will be found that they sustain the point—8 Paige, 639; 9 *Ib.*, 137; 10 *Ib.*, 583; 4 Peters, 221; 32 Mo., 142; 1 Stockton, N. J., 807; 3 Edwards, Ch. 195; 4 Comstock, 225; 1 M'd, Ch. 127–141.

It is true that there are other cases, perhaps, on a different line, but most of them are where there is actual notice of

the mortgage, or the equity of redemption, *eo nomine,* is alone purchased.

But we think that our own court has, in effect, decided the point. In *Pope vs. Solomons et al.*, 36 *Ga.*, 541, on the 545th page, Judge WARNER goes into the doctrine fully, and the court ruled that a creditor is not such a stranger that he cannot set up the usury. It is true that in 48 *Ga.*, 55, it is held that a creditor cannot enjoin another creditor, both being *judgment* creditors, from enforcing his *fi. fa.* on account of his having taken usury; but the ruling is there distinctly confined to judgments at law, and mortgage judgments are excepted from the operation of the rule. It is not easy to see the distinction in principle, it is true, but it seems to be put upon the Code.

In *Scofield vs. McNaught*, 52 *Ga.*, 69, the principle in 36 *Ga.*, 541, was reasserted and enforced, and though Judge TRIPPE dissented, he did so upon the ground that when the purchaser bought the land a deduction was made on account of the usury in the price which was paid, and Chief Justice WARNER, who delivered the opinion of the majority, seems only to have differed as to the fact, for he says: "If the value of the property transferred by Gardner to Scofield, under the contract between them, was of sufficient value at that time, in good money, to have covered the amount then due for it, *including the usury,* then Scofield has no equity which would entitle him to be relieved against the usury; for * * * then Scofield has not been hurt."

So in the case at bar, if Symons let Kohn or Lilienthal have this land at a less price on account of this mortgage, *including the usury,* Lilienthal has not been hurt; but the fact is, that Lilienthal had actually no notice of mortgage, or usury, and paid for the land full value; therefore he has been hurt. See also, 4 *Ga.* 221; 37 *Ga.* 364–381; 56 *Ga.* 671.

The principle, then, seems to be established by our own adjudications, that a party interested in the matter about which the usury might have been pleaded by the contracting

party, may, in certain cases, be subrogated to the right of the contracting party, and himself may set up the usury when his interests are attacked, if they spring out of the contract tainted with usury.

We think that the sound principle applicable to such cases, is this: wherever it would be inequitable for the contracting party, in his dealing with others, not to plead the usury, the other with whom he deals may himself plead it. It is the personal privilege of the contracting party to pay usury or plead usury; and it is equitable for him to do either so long as he thereby shall injure or hurt nobody else. He may pay any amount of usury and refuse to plead, or neglect to plead it, if he chooses so to do; and no stranger, not hurt by it, can interfere, either to compel him to plead, or if he refuse and fail, to take his shoes and plead in his stead.

But if he be insolvent, and has gone into bankruptcy and sold property for full value to another, and warranted the title thereto, ought he to be permitted to set himself up as so extremely just and honest that he will not plead usury as to his creditor, when by so doing he could protect his purchaser and make good his warranty? If his creditor has been, as in this case, overpaid by some $1,400.00, both principal and lawful interest, and has thereby got more than the law would allow by several thousand dollars—for he forfeited all the interest at the date of the execution of this mortgage—shall the debtor be so generous as to allow him to retain it all, and at the same time be so unjust to the purchaser as to allow him to collect still more out of the purchaser's property, for which he got full value, and which full value perhaps helped to pay some of the very money which already had overpaid the creditor? We think that such conduct would be very inequitable on the part of the vendor, and that in such a case the purchaser ought, in equity and good conscience, to be allowed to do what equity and good conscience ought to have prompted his vendor to do; that is, to file the plea of usury, set up this defence, and protect his purchase. And we cannot see any want of equit-

able dealing in the matter to the mortgage creditor. He has got more than the law gave him, much more, if the mortgagor had defended by the plea of usury; and he was saved only by the failure of the mortgagor to put in a *personal plea*—to exercise a *personal privilege*, which he could do so far as he alone was concerned; but which he ought not to do to give one man more than the law strictly administered authorized, at the expense of another man, who was insisting only on his legal rights. To enforce such a principle would be to annul the fundamental equitable maxim, that a man must be just before he can be generous; he must make good his debt before he can give away his property, or which is the same thing, his chose in action.

It is scarcely necessary to add that this is no proceeding to recover usury back by suit after it has been paid; but it is a defense to this mortgage *fi. fa.*, to prevent its collecting more money than is due on it. As long as that instrument, tainted with usury, is being enforced, usury paid on it at any time may be purged out of it, if not purged before; and while the last usury paid on it was in 1863, and none has been paid on it since Lilienthal's or Kohn's purchase, yet the paper has never been purged of the taint—there has never been any settlement or novation, or other attempt to purge it, and this purchaser, under the view we take of the law, may now have that done so far as to protect his purchase, which the mortgagor, his vendor, ought to have done for him.

The judgment is reversed on the ground that the court erred in ruling that the purchaser, under the facts disclosed in this record, could not set up the usury paid on the mortgage.

Judgment reversed.