### 8866.  KING *v.* LUCK ILLUSTRATING COMPANY.

In charging the jury the court must give "the law of the case , to the extent of covering the substantial issues made by the evidence, whether requested or not, or attention be called to it or not; otherwise the verdict will be set aside."

DECIDED JANUARY 29, 1918.

Complaint; from Dekalb superior court—Judge Smith.  April 17, 1917.

*Brewster, Howell & Heyman, Mark Bolding,* for plaintiff in error.

*Napier, Wright & Wood,* contra.

BLOODWORTH, J.  Dr. J. Cheston King was erecting a sanitarium "on beautiful Peachtree road, ten miles from Atlanta," and wished to advertise the opening thereof and to have some stationery in keeping with the magnificence of his plant.  W. J. Luck, representing the Luck Illustrating Company of Cleveland, Ohio, came to Atlanta and contracted to furnish the necessary advertising matter in the form of a booklet, and the letter-heads, envelopes, etc., and to design and furnish plates for printing the same.  The sanitarium was to be opened on August 15, 1914.  The booklets and stationery (except 200 each of booklets, envelopes to match, letter-heads and envelopes to match them, which were sent by special request to Chicago in the early part of July) were shipped from Cleveland on July 31, 1914, and as to their arrival in Atlanta the defendant testified as follows:  "I got notice on the 13th of August that this stationery, the folders, envelopes, and letter-heads were in Atlanta.  The opening was to be on the 15th of August.  The folders did not come in time to be used for the pur-

pose that I got them. As to what use I could make of these folders after they arrived in Atlanta—I could make no use whatever of them. I refused to accept the stationery. I refused to accept the booklets and letter-heads. I did not accept any part of the shipment. I wrote the Luck Illustrating Company at once that I refused to accept them, and why I refused. Before I received the notice from the Southern Railway Company on August 13th that the shipment was in Atlanta, I had no notice from the Luck Illustrating Company that it had been shipped—none whatever. I received the bill for this work just about the time the shipment came into Atlanta."

The defendant having refused to accept the goods, suit was brought by the Luck Illustrating Company, the petition being in part as follows: "3. That during the spring of 1914, and extending over a period up to and including the month of July, 1914, your petitioner did, at the special instance and request of the said defendant herein, perform services in designing a booklet for the opening of defendant's new sanitarium, located near the City of Atlanta, and also prepared and furnished certain letter-head designs and envelope designs, with drawings and plates, and further furnished the material and labor for printing ten thousand booklets, ten thousand envelopes for booklets, twenty thousand second sheets, and for printing twenty thousand envelopes to match letter-heads, and also prepared one bird's-eye wash drawing of said defendant's sanitarium; all of which will more fully appear by reference to the statement of account hereto attached, showing the work done and the charges made for the respective items, said statement of account being hereto attached, marked Exhibit 'A' and made a part hereof; to which reference is prayed as often as may be necessary. 4. That all of said services so rendered, work and material furnished, were and are of the reasonable value of the amount sued for herein, to wit, $1,745.32." The defendant filed a plea denying liability. The trial resulted in a verdict for the plaintiff for the full amount sued for. The defendant moved for a new trial on numerous grounds. The motion was overruled, and he excepted.

In the decision in the case of *Gainesville & Northwestern Railroad Co. v. Galloway*, 17 *Ga. App.* 702 (87 S. E. 1093), it was said: " 'From an early date the Supreme Court has uniformly

held that the law of the case must be given the jury to the extent of covering the substantial issues made by the evidence, whether requested or not, or attention be called to it or not; otherwise the verdict will be set aside.' *Central Railroad* v. *Harris,* 76 *Ga.* 511, citing *Terry* v. *Buffington,* 11 *Ga.* 337 (56 Am. D. 423) ; *Amos* v. *Amos,* 12 *Ga.* 100; *Formby* v. *Pryor,* 15 *Ga.* 258; *White* v. *Dinkins,* 19 *Ga.* 285; *Fain* v. *Cornett,* 25 *Ga.* 184; *Glass* v. *Cook,* 30 *Ga.* 133; *Foster* v. *Jenkins,* 30 *Ga.* 476; *Collins* v. *Collins,* 44 *Ga.* 128, 132; *Van Arsdale* v. *Joiner,* 44 *Ga.* 173; *Schofield* v. *McNaught,* 52 *Ga.* 69; *Evans* v. *Arnold,* 52 *Ga.* 170; *Bryson* v. *Chisholm,* 56 *Ga.* 596; *Clark* v. *Hulsey,* 54 *Ga.* 608; *Wylly* v. *Gazan,* 69 *Ga.* 506, 510.' " Under the principle announced above, we think a new trial should be granted in this case because the court failed to charge on two material and substantial issues made by the evidence and urged by the plaintiff in error: (*a*) The plaintiff in error insists that the contract provided for the delivery of the goods in Atlanta, and that this contention was not submitted to the jury and was not even referred to by the judge in the charge. Under the facts in this case we think this was error, at least so far as it relates to the booklets delivered in Atlanta. As to the place of delivery the defendant testified: "The booklets were to be delivered to me by the Luck Illustrating Company in Atlanta, Georgia." In addition to what is quoted in the statement of facts above, relative to the necessity of delivering the books promptly, the defendant testified as follows: "This advertising matter should have been sent out soon enough to announce the opening of my sanitarium on August 15, 1914. . . As to what knowledge Mr. Luck had that I wanted these booklets in time to send out before the opening of my sanitarium on August 15th—the whole proposition was based upon the opening of the sanitarium. The booklets stated in the reading matter that the sanitarium was to be opened on the 15th of August, and I impressed upon Mr. Luck the necessity of having these booklets here in time—I told him that the folders were to be sent throughout the entire South. That is what I wanted the folder for. That was stated to him when we first took up the proposition to get them out, and then, when I was at his home in Cleveland, I impressed upon him the necessity of sending me the booklets so that I would have them to distribute before the opening, as I could not use them after the opening of

the sanitarium. . . I discussed with Mr. Luck about the open-
ing, that it was to be August 15th; the whole thing was based on
that. . . I wrote this letter of June 8th, 1914, but it had been
discussed and settled sometime before that. We had had conver-
sations, and I put it in writing. When Mr. Luck was at my office,
soliciting my business, he asked me when I would be ready to open
the sanitarium, and I said I would be ready about August 15th."
If this evidence is true, the Luck Illustrating Company was put on
ample notice that the booklets were to be sent "throughout the
entire south" for the purpose of advertising the opening of the
sanitarium prior to August 15th, the date named in the booklets
for the opening. This being true and the court having given
in charge the contention of the plaintiff that "delivery to a com-
mon carrier is in law delivery to the purchaser," the contention
of the defendant, supported by proof, that the booklets were to be
delivered in Atlanta, should have been also submitted to the jury,
with proper instructions. If the plaintiff contracted to deliver
the booklets in Atlanta, it should have adopted that method of
delivery which would have put them in the hands of the defendant
such a reasonable time before the 15th of August as would have
enabled him to advertise the opening of the sanitarium "through-
out the entire south."

(b) The 21st ground of the motion for a new trial is as fol-
lows: "Because the court failed to charge the jury the law relat-
ing to the contention of the defendant that under the agreement
entered into between the plaintiff and defendant the plaintiff agreed
to furnish free of charge the necessary designs, drawings, and
plates, for the purpose of carrying out said agreement, and de-
fendant was not [to] be liable to the plaintiff in any amount for
these articles. Defendant contends that said contention on his
part was supported by evidence and became one of the issues in
said case, and that it was the duty of the court to charge the jury
that if they believed that the plaintiff agreed to furnish such de-
signs, drawings, and plates free of charge, in no event could
the plaintiff recover for said drawings, designs, and plates; that
the court required the jury, if they found at all for the plaintiff,
to find against the defendant whatever it was reasonably worth to
furnish such designs, drawings, and plates. Defendant contends
that in no event, if the jury believed his evidence in said cause

on the subject, was the plaintiff entitled to recover for said designs, drawings, and plates, and the court should have so charged the jury, and the failure to charge the jury was error, prejudicial to the defendant." We think the court erred in not charging as herein contended. The bill of particulars attached to the petition shows the following items relative to designs, plates, and drawings: "To designing booklet opening new sanitarium, 'Afton Villa,' complete with color plates, $334.32; letter-head design; envelope design, drawings and plates, $50.75; one bird's-eye wash drawing of Afton Villa Sanitarium, $200.00." The defendant testified that Mr. Luck said to him, "I will get you up designs and let you see what kind of work I will give you, and the designs will not cost you one cent." "The first time I saw any of these particular drawings that I have been asked about is since they have been on exhibition in the court-room here. This large drawing was sent to me and returned by me. As to what knowledge I had of the wash drawings and of the cost of getting out the plates, and of the character of the work, as detailed here by Mr. Luck on the stand—none whatever. As to what was said by Mr. Luck in reference to having a wash drawing made at a cost of $200, at the time he talked to me about this booklet—nothing was ever mentioned except that he was sending a beautiful bird's-eye view that I could frame. That was all that was ever mentioned regarding any drawing. Not a word was mentioned about the price of it. No, he never intimated to me that he expected to charge me $200 for a drawing, not a word was mentioned." There was also some evidence that it was not customary to charge for such preliminary work for the "designs, dummies, and sketches."

We find no other error in the trial of the case.

*Judgment reversed. Broyles, P. J., and Harwell, J., concur.*