67009. PRITCHETT v. ANDING et al.

MCMURRAY, Presiding Judge.

This is an action brought by the plaintiffs (husband and wife) against the builder-seller of their home. The plaintiffs moved into the

completed house on August 17, 1978. They contracted to buy it under a Veterans Administration loan. The loan was closed on October 5, 1978. Plaintiffs had the house inspected both before they moved in and before their loan was closed in October. The inspectors uncovered no deficiencies. However, several months after their loan was closed plaintiffs noticed a water problem in both their basement and yard. Plaintiffs claim that the defendant guaranteed them he would correct any deficiencies in their dwelling if he were notified within a year from the date of purchase by plaintiffs. Plaintiffs notified the defendant of the water problem within a year of their purchase and defendant failed to correct it. As such, plaintiffs brought suit against defendant for breach of warranty, defective construction, negligence, and punitive damages. The jury awarded plaintiffs a verdict in the amount of $36,250 and the judgment followed. Defendant appeals following the denial of his motion for judgment notwithstanding the verdict or for a new trial. *Held:*

1. Defendant contends there was no passive concealment or negligence on his part and that with no covenants or promises in the real estate sales contract or deed, the principle of caveat emptor controls. Defendant contends that as such, the trial court erred by refusing to direct a verdict in his favor and by denying his motions for judgment notwithstanding the verdict and for a new trial. Defendant's contention is without merit.

Defendant relies on the case of *P. B. R. Enterprises v. Perren,* 243 Ga. 280, 281 (253 SE2d 765), as the general principle controlling this case. In *P. B. R. Enterprises v. Perren,* 243 Ga. 280, supra, at page 281, the court held that "[s]ubject to certain exceptions [one of which is in cases of passive concealment by the seller of defective realty. See *Wilhite v. Mays,* 140 Ga. App. 816, 818 (3) (232 SE2d 141)], the doctrine of caveat emptor applies to the sale of realty, there are no implied warranties as to the physical condition of the property sold, the purchaser buys at his own risk, and the purchaser cannot have an abatement of the purchase price on account of the seller's misrepresentations unless he exercised ordinary diligence to discover the falsity of the representations." However, "neither caveat emptor nor merger by deed is a viable defense by a builder-seller against a homeowner's tort-negligence and breach of contract claims seeking recovery for latent building construction defects about which the purchaser-homeowner did not know and in the exercise of ordinary care would not have discovered, which defects either were known to the builder-seller or in the exercise of ordinary care would have been discovered by him." *Worthey v. Holmes,* 249 Ga. 104, 106 (3) (287 SE2d 9), affg. *Holmes v. Worthey,* 159 Ga. App. 262 (282 SE2d 919).

Here, there was evidence in the record to suggest at least passive

concealment and breach of contract. Specifically, plaintiff (Mr. Anding) testified, "There was a couple of damp spots on the wall there. Mr. Pritchett [defendant] told my wife the workers used the bathroom on the walls." In response to defense counsel's question, "Is there anything that you know about that Melvin [defendant] painted on or hid or covered up or hid from you in any way," plaintiff (Mrs. Anding) stated, "He [defendant] covered up the fact of the water problem instead of correcting it." She (plaintiff) stated that defendant, to cover up the water problem, hauled in more dirt to put on top of the wet weather stream under the house rather than piping it out. Furthermore, the evidence reflects that plaintiffs exercised ordinary care in trying to discover possible defects of the house. Several inspectors examined the house before the plaintiffs moved in and before they finally closed their loan. Moreover, the record indicates that during the time the plaintiffs moved into the home until the time they closed their loan (approximately 1 1/2 months), they experienced no water problem and in fact, knew of none. However, several months after their home loan was closed, plaintiffs began to notice a water problem in both their basement and backyard.

Defendant, at all times (both before the contract was signed and the deed was transferred and afterwards) represented (orally) to the plaintiffs that he would take care of any house related problems. He specifically testified, "I told Nancy [Mrs. Anding] she didn't have a thing to worry about, that anything, you know, that was wrong with the house I could fix it." Although defendant claims he was correcting the water problem until plaintiffs hired an attorney, the fact remains that the water problem remained uncorrected for approximately eight months after defendant was notified of the problem until plaintiffs hired an attorney and at the time of the trial, still remained uncorrected.

" '[A] verdict should not be directed unless there is no issue of fact, or unless the proved facts, viewed from every possible legal point of view, can sustain no other finding than that directed.' *Norris v. Coffee,* 206 Ga. 759 (58 SE2d 812)." *Davis v. Wight,* 207 Ga. 590 (2) (63 SE2d 405). Here, several issues of fact exist. It is for the jury to decide whether the defendant concealed the wet weather stream underneath the house, whether he was negligent in the construction of the house, and whether he breached any warranties made to the plaintiffs. There was enough evidence to make out a genuine issue of fact as to each of these issues. Therefore, the trial court did not err by refusing to direct a verdict in defendant's favor and by denying defendant's motions for judgment notwithstanding the verdict and

for a new trial.

Defendant further complains that the record is without any foundation or basis on which to base the verdict. However, the plaintiffs presented an expert witness in the field of repairs, and he testified as to the amount of damages. This was a sufficient basis for the jury's verdict.

2. Defendant contends the trial court erred by allowing a jury view on its own motion. Defendant contends that since plaintiffs' counsel made no formal request for a view, it was improper for the court to grant one. Defendant's contention is without merit.

It is well established that whether a jury should be allowed to view the premises is a matter which rests in the sound discretion of the trial court, and that the court's ruling in granting or refusing a view will not be reversed, unless under the particular facts of the case, the court abuses its discretion. *Sipple v. Fowler,* 151 Ga. App. 135, 136-137 (1) (259 SE2d 142); *Rogers v. McElroy,* 106 Ga. App. 120 (1) (126 SE2d 294); *Shahan v. American Tel. &c. Co.,* 72 Ga. App. 749 (35 SE2d 5); *Moore v. Macon Coca-Cola Bottling Co.,* 180 Ga. 335, 336-342 (1) (178 SE 711). Here no abuse of discretion exists.

It appears from the evidence that a view of the premises was necessary for the jury to better understand the testimony given in the case. The plaintiff herself stated that a view would help her describe the property in question and in fact, asked the judge whether this could be done. The mere technicality of plaintiffs' counsel not formally requesting a view does not change the fact that a view was necessary for the jury to better understand the evidence. The trial judge recognized this and permitted the view. His discretion was sound.

3. Defendant contends the trial court erred by refusing to permit him (defendant) to attend the view. To support his contention, defendant cites the case of *Chance v. State,* 156 Ga. 428 (119 SE 303), which held that a criminal defendant must be present at a view unless he has waived his right. In light of recent case authority, this case is not dispositive and as such, defendant's contention is without merit.

In *Jordan v. State,* 247 Ga. 328 (276 SE2d 224), the court considered the question (whether a criminal defendant must be present at a view unless he has waived his right) again and somewhat limited *Chance v. State,* supra. In *Jordan v. State,* 247 Ga. 328, supra at pages 345, 346, the Supreme Court discussed two types of jury views: (1) the "evidentiary view" and (2) the "scene view." The "scene view" was said to be "to permit the jury to view the premises relevant to the case to enable the jury to better understand the testimony and

other evidence introduced in court" and was not "evidence" in the case. Since the "view" in the *Jordan* case was a "scene view," the court held that it was within the trial judge's discretion as to whether the defendant would be present, and it was not an abuse of discretion to refuse to permit the defendant to be present at the view.

The case sub judice, like *Jordan,* involved a "scene view." However, unlike *Jordan* (which was a criminal case), the present case is a civil case. This difference is not dispositive and in fact, makes for a stronger case because if it is not an abuse of discretion to refuse to permit a criminal defendant to be present at a "scene view," it certainly is not an abuse to deny a civil defendant that privilege.

4. Defendant contends the trial court erred by refusing defense counsel's request to attend the view with the jury. Defendant argues that by refusing this request, defense counsel was hampered in his ability to effectively argue the case and was unable to protect his client's rights and interest. This contention is without merit.

Here, three bailiffs accompanied the jury with instructions not to talk to any juror or communicate to them or permit anyone else to communicate with them. Further instructions were given to the jury not to communicate with each other other when viewing the premises. The judge explained that he was allowing them (the jury) to view the premises to best explain the sworn testimony and that any information gained from viewing the premises could be applied to the sworn testimony, but that no conclusions from viewing the premises could be used in place of the sworn testimony. These safeguards were adequate to protect defendant's rights and interest. Furthermore, defense counsel was allowed to view the premises thoroughly after the jury had left. Thus, his ability to argue the case was not hampered.

5. Defendant contends the trial court erred by allowing the testimony of an expert witness into evidence over the objection of defense counsel. Defendant contends the expert witness' name was well known to plaintiffs' counsel and that it was never supplied to defendant, even though such was required at least five days prior to trial by the pretrial order. Defendant's contention is without merit.

Section 5 (a) (3) of the pretrial order states, "Plaintiff will call: [as witnesses at the trial of the case] Two expert builders, whose names will be furnished when they are available." Section 5 (c) of the pretrial order adds, "In the event there are other witnesses to be called at the trial, a statement of their names and the general subject matter of their testimony will be served upon opposing counsel and filed with the Court at least 5 days prior to trial."

In the case sub judice, § 5 (a) (3) of the pretrial order is the applicable section, not § 5 (c) as cited by defendant. The record

reflects that at the trial of the case plaintiffs' counsel furnished the name of the expert witness used in the case to both the defense counsel and the court. This was in accordance with § 5 (a) (3) of the pretrial order, and the fact that plaintiffs' counsel had been the witness' personal attorney and friend does not establish any violation of that section (referring to § 5 (a) (3) of the pretrial order). In other words, there is no concrete evidence to show the witness' name became available before the time when it was furnished.

Defendant further contends the witness was never qualified as any type expert and that his testimony should thus have been excluded. This contention is also rejected. Generally, nothing more is required to qualify an expert than that he has been educated in a particular trade or profession; and this special knowledge may be derived from experience as well as study and mental application. See *Morris v. State,* 159 Ga. App. 600, 601 (1) (284 SE2d 103); *Dennis v. State,* 158 Ga. App. 142, 143 (3) (279 SE2d 275); *Carter v. Marble Prods.,* 179 Ga. 122 (1), 124-125 (175 SE 480).

Here, the witness testified as to the amount of damages caused by the water problem. The record indicates that the witness had substantial experience in making cost estimates of putting a place back in good shape after it had been damaged. The witness testified that he had been in the repair business, FHA, VA, and construction industry, for himself, from 1965 until 1980 and prior to that time, worked for his dad (who built homes). The witness was clearly qualified to testify as to the amount of damages caused to plaintiffs' house by the water problem.

6. Defendant contends the trial court erred in failing to charge the jury on the "Georgia Law of comparative negligence." Defendant contends the evidence demanded such a charge and as such, his timely request for the charge should have been granted. We find merit in defendant's contention.

The Supreme Court has uniformly held that the law of the case must be given to the jury to the extent of covering the substantial issues made by the evidence, whether requested or not, or attention be called to it or not; otherwise the verdict will be set aside. *Fowler v. Gorrell,* 148 Ga. App. 573, 577 (2b) (251 SE2d 819); *Hager v. O'Neal,* 147 Ga. App. 808, 809 (1) (250 SE2d 555); *King v. Luck Illustrating Co.,* 21 Ga. App. 698, 699 (94 SE 890). It is the duty of the court to charge the jury on the law as to every controlling, material, substantial and vital issue in the case. Where the court fails to give the benefit of a theory of the defense which is sustained by the evidence, a new trial must be granted. *Lincoln Life Ins. Co. v. Anderson,* 109 Ga. App. 238, 240-241 (136 SE2d 1); *Berger v.*

*Plantation Pipeline Co.,* 121 Ga. App. 362, 364 (6) (173 SE2d 741).

Here there was evidence presented which would tend to show the plaintiffs were negligent in not having the water problem on their property taken care of sooner. The expert witness testified that the further deteriorations of plaintiffs' house were caused by not correcting the water problem. He stated that the damages had probably doubled since the first time he examined the house. Moreover, the plaintiffs agreed that the condition of their house had grown worse since the water problem first began. As such, a material and substantial issue arose as to the plaintiffs' negligence in not having the water problem taken care of sooner. Thus, it was error for the court not to charge the jury on the law of comparative negligence. Therefore, the verdict must be set aside and a new trial granted.

*Judgment reversed. Shulman, C. J., and Birdsong, J., concur.*

DECIDED OCTOBER 28, 1983.

*William G. Posey,* for appellant.
*Alton T. Milam,* for appellees.