A90A1566. JIM ELLIS ATLANTA, INC. v. McALISTER.
(400 SE2d 389)

BANKE, Presiding Judge.

The appellee acquired an Audi 5000S automobile from the appellant under a five-year lease agreement, and during that period the vehicle developed severe engine damage. Alleging that this damage was attributable to faulty maintenance and repair work performed by the appellant, the appellee sued the appellant for monetary relief, contending that it had breached a contractual obligation to her to perform the maintenance and repair work in a competent and proficient manner and, alternatively, that it had breached its obligations under an extended warranty and service contract it had sold to her in connection with the lease. The case was tried before a jury, which awarded the appellee actual damages in the amount of $10,703 under the faulty repair theory, plus expenses of litigation in the amount of $4,500. (The manufacturer of the vehicle, Volkswagen of America, Inc., was also named as a defendant in the action, but the jury returned a verdict in its favor.) The case is before us on appeal from the denial of the appellant's motion for new trial.

The appellee testified that the vehicle began to manifest a coolant loss problem soon after she took delivery of it in November of 1984. She brought it back for service approximately six months and 6,400 miles later, and the invoice or work order prepared by the appellant in connection with that visit bears the notation "CK FLUID

LEAK." She again returned for routine maintenance a month later, but there is no indication that she complained about the coolant loss problem on that occasion. Her next visit to the appellant's service department took place in February of 1986, by which time the vehicle had been driven 17,000 miles. Again, the notation "check coolant leak" appears on the invoice/work order prepared by the appellant, along with a notation that a hose clamp was tightened in response to that directive.

The appellee testified that a few weeks after the latter service visit, a red warning light came on while she was driving the vehicle, indicating that the engine was overheating. She stated that the light went off after she pulled into a gas station and added coolant, but that it would reappear every month or so thereafter, prompting her to repeat the process of adding coolant. Her next visit to the appellant's service department occurred in June of 1986, by which time the car had been driven approximately 21,000 miles. Although she could not state positively that she had complained about the coolant loss problem during this visit, she testified: "I'm sure . . . I would have complained of the coolant leak because it was a major problem and it continued to do this at all times." She unquestionably complained about the problem during her next visit to the service department, which occurred approximately four months and 4,000 miles later, and the invoice reveals that a "valve for heat regulation" was replaced in response to that complaint. However, within a few weeks the warning light appeared again. The appellee stated that the light continued to come on every four or five weeks thereafter and that she continued to respond by adding coolant until July of 1987, when the engine died before she could get to the nearest gas station, which was only a quarter to a half mile away. The car, which had been driven approximately 35,000 miles by this time, was towed to the appellant's service department, where certain major repairs were performed, including replacement of the cylinder head and water pump, at a cost to the appellee of $1,730.

The appellee testified that the car's engine was sluggish and began making a clicking noise following these latter repairs and that within a few weeks the warning light began coming on again. She testified that when she called the appellant's service department to complain about these problems she was instructed to bring the vehicle back "whenever you are in the area," but that due to her frustration concerning the appellant's previous inability to correct the coolant loss problem, as well as certain other problems with the vehicle, and due also to the fact that the appellant had moved to a less convenient location, she did not bring the vehicle back but simply continued to add coolant when the warning light came on. She stated that the vehicle's sluggishness and its rate of coolant usage increased over the

next ten months and 10,000 miles of driving, until she finally discontinued driving it in May of 1988 because it "would hardly go 35 miles an hour." There was testimony that water vapor could be seen "coming out the exhaust" by this time, indicating that coolant was infiltrating the engine. Although the appellee was no longer driving the vehicle, she continued to make the payments due under the lease. *Held*:

1. The appellant contends that it was entitled to a directed verdict because the appellee failed to present any "direct evidence . . . that the materials used or the services performed [in repairing the vehicle] were in any way defective" and also because, "while the evidence indicated appellee's engine was damaged at some point after July 1987, the engine failure could have been caused by innumerable other factors besides an improper repair. . . ." We are, of course, constrained to uphold the jury's verdict if there is any evidence to support it. See generally *Scott v. Scott*, 243 Ga. 472, 473 (254 SE2d 852) (1979). There is no question that the appellee complained to the appellant of a coolant loss problem well before the July 1987 breakdown and that the appellant performed at least two repairs on the cooling system in response to those complaints. We believe the jury was authorized to conclude from the evidence that these repairs failed to correct the problem and that the engine was damaged as the result of that failure. The jury was further authorized to conclude that the appellee paid the appellant $1,700 to repair the resulting engine damage and that these repairs similarly failed to correct the coolant loss problem, resulting in further damage to the engine. Accordingly, we hold that the trial court did not err in refusing to direct a verdict in the appellant's favor on the issue of liability.

2. The appellant alternatively contends that even if there was some evidence to support a finding of liability, there was no competent evidence to support an award of damages in the amount returned by the jury, i.e., $10,703. To establish the amount of her damages, the appellant relied on the testimony of a close friend who had performed routine maintenance on the vehicle and was personally familiar with the repairs performed by the appellant. This witness testified that he had worked as a "technical service representative" for Ford Motor Company some 25 years previously, that this job had involved advising dealers on difficult repair problems as well as teaching classes on "various components of how to repair transmissions or overhaul the engines or all of the different components of the cars," and that he had performed numerous repairs on automobiles in a non-professional capacity since leaving Ford, including the performance of complete engine overhauls. He stated that the vapor in the exhaust coming from the appellee's vehicle indicated that water from the cooling system was somehow getting into the engine, that this could occur only

through an opening in the cylinder head or in the engine block itself, and that since the cylinder head had supposedly been replaced by the appellant in July of 1987, it followed that there must be a crack or hole in the block. Based on his own experience in rebuilding engines, combined with information supplied to him by an "Audi specialist" whom he had consulted, he opined that it would cost between $7,000 and $8,000 to repair the vehicle.

"Whether a witness is qualified to give his opinion as an expert is within the discretion of the trial court, and such discretion will not be disturbed unless manifestly abused. (Cits.)" *Smith v. Hosp. Auth. of Terrell County,* 161 Ga. App. 657, 659 (2) (288 SE2d 715) (1982). "Generally, nothing more is required to qualify an expert than that he has been educated in a particular trade or profession; and this special knowledge may be derived from experience as well as study and mental application. (Cits.)" *Pritchett v. Anding,* 168 Ga. App. 658 (5), 663 (310 SE2d 267) (1983). We hold that the trial court was authorized to allow this witness to testify as an expert and that a sufficient foundation was laid to enable him to express an opinion as to the cost of repairing the vehicle. The fact that his opinion in this regard was based in part on hearsay did not render it inadmissible. "When an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion." *King v. Browning,* 246 Ga. 46, 47 (268 SE2d 653) (1980). Moreover, "[a]utomobiles today are items well within the common knowledge of everyone including jurors. . . ." *Gwinnett Commercial Bank v. C & S Bank,* 152 Ga. App. 137, 141 (262 SE2d 453) (1979). Thus, the jurors could be expected to draw upon their own knowledge and experience in dealing with automobiles in weighing the reasonableness of the repair estimates offered by this witness. Cf. *White v. Miller,* 194 Ga. App. 816 (3) (392 SE2d 30) (1990).

Accepting the high end of the range of estimates offered by this witness as to the cost of repairing the vehicle and adding to that figure the $1,700 the appellee had paid the appellant for the July 1987 repair job, the jury was authorized to conclude that the appellee had sustained actual damages in the amount of $9,700 as the result of the faulty repairs performed by the appellant. While this figure is roughly $1,000 less than the amount of damages awarded by the jury, the jury was instructed that it would be authorized to add prejudgment interest from the date of the alleged breach of the repair contract, a period of approximately two years. See generally OCGA § 13-6-13. In addition, the jury would have been authorized to award damages to the appellee for the "hire on the machine while rendered incapable of being used." *Padgett v. Williams,* 82 Ga. App. 509, 511 (61 SE2d 676)

(1950); *General GMC Trucks v. Crockett*, 145 Ga. App. 503 (2) (244 SE2d 78) (1978). As these latter damages, as established by the amount of her lease payments, clearly totaled well over $1,000, we hold that the jury's award was supported by the evidence.

3. The appellant contends that there was no evidentiary basis for the award of litigation expenses. The jury based its award of litigation expenses on an express finding that the appellant had acted in bad faith in connection with the transaction, and the award must be affirmed if there is any evidence to support that finding. See *Harrell v. Gomez*, 174 Ga. App. 8, 11 (6) (329 SE2d 302) (1985). See generally OCGA § 13-6-11. There was evidence in this case from which the jury could have determined both that the $1,700 repair job performed by the appellant was necessitated by its own prior failure to correct the coolant loss problem and these repairs also failed to correct the problem. Based on this evidence, we hold that the jury was authorized to conclude that the appellant had acted in bad faith in charging the appellant for these repairs.

4. Citing authority to the effect that the correct measure of damages for breach of a contract to repair an automobile is the cost of repairing the vehicle rather than the loss in market value caused by the breach, see *Simmons v. Boros*, 255 Ga. 524 (341 SE2d 2) (1986), the appellant contends that the trial court erred in giving the appellee's requested charge that "one need not be an expert or dealer in an article of personal property such as a car but may still testify as to its value if he has had opportunity for forming a correct opinion." As an abstract statement of law, this charge was, of course, correct. See OCGA § 24-9-66. Because the trial judge did not suggest to the jury that it would be entitled to award damages based on loss in market value rather than the cost of repairing the vehicle, and as it has not been suggested that any evidence was introduced from which the jury might have calculated an award of damages based on loss in market value, we conclude that any error the court may have committed in giving this charge was harmless.

*Judgment affirmed. Birdsong and Cooper, JJ., concur.*

DECIDED DECEMBER 5, 1990 —
REHEARING DENIED DECEMBER 17, 1990.

*Christina K. Cooley, Daniel L. Dean*, for appellant.
*Carol D. Sweet, Neely & Player, Ronald D. Reemsnyder*, for appellee.