## A09A2215. ESPRIT LOG AND TIMBER FRAME HOMES, INC. et al. v. WILCOX et al.

### (691 SE2d 344)

MILLER, Chief Judge.

Esprit Log and Timber Frame Homes, Inc. d/b/a Fireside Log Homes sued Ricky Wilcox and Sherry Wilcox seeking damages for breach of contract. The Wilcoxes answered and asserted a counterclaim against Esprit Log and Don Mahaffy, d/b/a Fireside Log Homes (collectively, "Fireside")[1] for breach of contract, negligent construction, conversion, fraud, and attorney fees. The jury awarded the Wilcoxes $200,000 on their counterclaim, $450,000 in punitive damages, and $20,000 in attorney fees. The trial court reduced the punitive damages award to $250,000. On appeal, Fireside claims that the trial court erred in overruling its motion for new trial because (i) the verdict on the counterclaim is excessive and unsupported by competent or sufficient evidence, (ii) the punitive damages award is not supported by the evidence, and (iii) the Wilcoxes received a double recovery. We affirm because the jury's verdict was authorized by the evidence.

"There is a presumption in favor of the validity of verdicts. And after rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict." (Citation and punctuation omitted.) *Williamson v. Strickland & Smith, Inc.*, 263 Ga. App. 431 (587 SE2d 876) (2003). So viewed, the evidence shows that Fireside contracted to manufacture and supply the Wilcoxes with a "log wall system" and a "roof system" for the construction of a residential home in Fannin County. The promised log wall system consisted of pre-cut and pre-drilled logs treated with stabilizing and insecticide chemicals. Fireside represented that the logs could be installed within seven to ten days after delivery. The promised roof system included both the material for and the installation of a second floor roof structure, dormers, a portico, and interior stairs. The Wilcoxes agreed to pay $128,600 for the material and services and tendered $65,000 as a deposit. The Wilcoxes ultimately paid Fireside $125,260.

When the logs arrived at the construction site, they were not pre-cut or pre-drilled. The Wilcoxes met with Mahaffy, who informed them that Fireside's machinery was unable to pre-cut and pre-drill the logs, but that Fireside had decided to ship the logs to avoid delays. According to Mr. Wilcox, a crane had to stay on site while the logs were cut and drilled, and in some cases individual logs had to be

---

[1] The Wilcoxes added Mahaffey and Leland Rhodes, a/k/a Rusty Rhodes, as additional parties. The Wilcoxes subsequently dismissed their claims against Rhodes without prejudice.

hoisted into place, marked, and then removed for cutting. It took five months for the Wilcoxes to complete the walls, notwithstanding Fireside's representation that it would take only two or three extra days to cut and drill the logs on site.

There were also problems with the completion of the roof system. Fireside contracted with Canadian-based Charlie Patrick to construct the roof. Patrick and his crew were unable to cross the United States border. Patrick sent another crew to install the roof, but the crew left the project unfinished because Fireside refused to pay Patrick for certain labor costs. Fireside decided to use a local crew to work on the roof, supervised by Rhodes. Fireside instructed Rhodes to send the crew to other job sites, causing delays. According to Rhodes, the stairway designed by Fireside did not fit and had to be moved, causing more delays, and Rhodes acknowledged that certain logs supplied by Fireside were mismatched, causing a portion of the work to be torn down and redone.

Mr. Wilcox testified that more that $100,000 in additional supplies, expenses, and labor was required to repair and complete Fireside's work. He also contended that the Wilcoxes paid between 5/8 and 3/4 of $335,000 in interest expenses attributable to construction delays caused by Fireside. The Wilcoxes eventually sold the completed residence for $1,620,000.

1. Fireside claims that the trial court erred in overruling its motion for new trial because there was no competent evidence to support the jury's verdict on the Wilcoxes' counterclaim. We disagree.

"[T]he denial of a motion for a new trial is . . . a matter within the sound discretion of the trial court. Accordingly, it will not be disturbed if there is any evidence to authorize it." (Punctuation and footnotes omitted.) *Defusco v. Free*, 287 Ga. App. 313, 314 (651 SE2d 458) (2007). Further, the jury's award will not be disturbed if it is within the range of damages established by the evidence. *Watkins & Watkins, P.C. v. Williams*, 238 Ga. App. 646, 650 (8) (518 SE2d 704) (1999).

Fireside argues that the true measure of damages was the difference in the fair market value of the home as it was actually constructed and the fair market value of the home as it should have been constructed.[2] Therefore, Fireside contends, the Wilcoxes' failure to introduce probative evidence of fair market value was "fatal to their claim for damages." This argument has no merit. Although

---

[2] The jury was instructed, among other things, that they could measure damages for defective work based on the reasonable cost of correcting the defective work and, if a contracting party abandons his obligation, the reasonable cost of completion.

diminution in value is an available measure of damages for defective construction,

> [a]s a general rule, damages for defective construction, whether those damages are the result of a breach of contract or negligence of the contractor, are determined by measuring the cost of repairing or restoring the damage, unless the cost of repair is disproportionate to the property's probable loss of value.

(Citations omitted.) *John Thurmond & Assocs. v. Kennedy*, 284 Ga. 469, 470 (1) (668 SE2d 666) (2008). Accordingly, "[i]f, as in the instant case, [the Wilcoxes] seek[ ] to recover based on the cost of repair method, evidence of the fair market value of the improved property is not a necessary element of [their] claim for damages." (Citations and footnote omitted.) Id. at 471 (1).

Fireside also complains that the Wilcoxes failed to prove damages with respect to interest costs stemming from Fireside's breach of contract. "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. Further,

> [r]emote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract.

OCGA § 13-6-8.

The evidence shows that during contract negotiations Mr. Wilcox told Mahaffy that the Wilcoxes would be borrowing "a huge amount of money[,] . . . almost [one] million dollars" to fund the construction of the house and that "the amount of interest could eat me alive if it wasn't done quickly." In light of these concerns, Mahaffy agreed that Fireside's work would be a "priority job." Mr. Wilcox testified that 10 months in construction delays, and therefore between 5/8 and 3/4 of $355,000 in interest costs, were attributable to Fireside.[3] It follows

---

[3] Fireside points out that on cross-examination Mr. Wilcox testified that it took seven months to complete Fireside's work and that the amount of investment interest reported on the Wilcoxes' tax return was only $166,915. It was up to the jury to resolve inconsistencies in the evidence.

that "the jury would have been authorized to conclude that [Fireside's] failure to comply with the contract resulted in increased interest costs to [the Wilcoxes] and that such damages were within the contemplation of the parties at the time the contract was made," ((citation omitted) *Executive Constr. v. Geduldig*, 170 Ga. App. 560, 560-561 (1) (317 SE2d 564) (1984)), and that the costs were recoverable as consequential damages.[4]

Fireside also contends that various costs specifically claimed by the Wilcoxes were too speculative to be awarded as damages. Mr. Wilcox testified at length as to the costs associated with repairing and completing Fireside's work. Pretermitting whether any specific cost item was supported by insufficient data, the consequential damages associated with the interest costs were alone sufficient to place the jury's verdict within the range of the evidence. See *Beasley v. Wachovia Bank*, 277 Ga. App. 698, 698-699 (1) (a) (627 SE2d 417) (2006); *Jim Ellis Atlanta v. McAlister*, 198 Ga. App. 94, 97-98 (2) (400 SE2d 389) (1990). Accordingly, the trial court did not err in failing to grant a new trial on the grounds of insufficient evidence to support the amount of the verdict.

2. Fireside claims that the trial court erred in denying its motion for a new trial on the grounds that the punitive damages award was not supported by the evidence.[5] We disagree.

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

OCGA § 51-12-5.1 (b). We will uphold a punitive damages award if there is any evidence to support it. *Paine v. Nations*, 283 Ga. App. 167, 170-171 (2) (c) (641 SE2d 180) (2006).

As a rule, "[p]unitive damages may only be awarded in tort

---

[4] Although the additional interest could have been awarded as consequential damages, the judgment on the jury's verdict was not, as Fireside contends, a judgment "including interest" for purposes of *Bentley v. Phillips*, 171 Ga. 866, 877 (5) (156 SE 898) (1930) (applying the requirement that "no part of [a] judgment shall bear interest except the principal which may be due on the original debt[ ]" to a verdict including unspecified principal and interest) (citation omitted).

[5] The trial court did not bifurcate the proceeding on the issue of punitive damages as contemplated by OCGA § 51-12-5.1 (d). The parties expressly consented to the procedure followed by the trial court, and no error is raised on this account. See *Martin v. Williams*, 215 Ga. App. 649, 651 (2) (451 SE2d 822) (1994) (appellants waived objection to trial court's failure to bifurcate proceedings on punitive damages by acquiescing in the form of the verdict and failing to raise the issue at trial).

actions in which there is a valid claim for actual damages." (Citation omitted.) *Nash v. Studdard*, 294 Ga. App. 845, 851 (3) (670 SE2d 508) (2008). The Wilcoxes' counterclaim included a claim for fraud, and the trial court charged the jury on fraud and punitive damages. "Even in an action for breach of contract, where there were matters of record relating to fraud, punitive damages can be awarded, for fraud, if found, is tortious conduct." (Citations and punctuation omitted.) *Clark v. Aenchbacher*, 143 Ga. App. 282, 284 (1) (238 SE2d 442) (1977).

The evidence shows that Fireside knew that it did not have the equipment to pre-cut and pre-drill the type of logs ordered by the Wilcoxes, but accepted the order with the knowledge that it could not deliver on its promise to deliver pre-cut and pre-drilled logs. See *Lumpkin v. Deventer North America*, 295 Ga. App. 312, 314 (1) (672 SE2d 405) (2008) ("[a] promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud") (punctuation and footnote omitted). After the logs arrived at the home Fireside further misrepresented that there would be only a two or three day delay while the logs were cut and drilled on site. The jury could conclude that Fireside's actions amounted to fraud or such indifference to consequences as to support an award for punitive damages. See *Rosenberg v. Mossman*, 140 Ga. App. 694, 696-698 (4) (231 SE2d 417) (1976) (wilful misrepresentation sufficient to support punitive damages award).

3. Fireside contends that the trial court erred by denying its motion for new trial on the grounds that the Wilcoxes received a double recovery. We disagree.

We have previously found that a party may "not recover for both breach of contract and fraud if the fraud related *purely* to the inducement to enter into the contract." (Citation omitted; emphasis supplied.) *Tankersley v. Barker*, 286 Ga. App. 788, 791 (2) (651 SE2d 435) (2007). Fireside argues that it is impossible to tell from the form of the verdict whether or not the jury awarded the Wilcoxes damages for both fraud and breach of contract, and that the case must therefore be retried. We disagree. *Tankersley*, on which Fireside relies, does not support its position. The jury in *Tankersley* entered a "detailed verdict" from which we found that the jury awarded damages for both breach of contract and fraud. Id. at 789, 791 (2). Further, the fraud in *Tankersley* went solely to the fraud in the inducement, but the evidence of Fireside's fraud goes to misrepresentations beyond those made to induce the Wilcoxes to enter into the contract. Furthermore, "[p]resumptions favor the validity of verdicts and a construction, if possible, will be given which will uphold them." (Citation and punctuation omitted.) *Southeastern*

*Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 164 (1) (e) (473 SE2d 256) (1996). It would have been the better practice to use a more detailed verdict form in this case. However, since the verdict form, "which neither party excepted to, did not specify which of the several underlying causes of action [that] were pled formed the basis of that award[,]" Fireside cannot show that the Wilcoxes received an impermissible double recovery. Id.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 1, 2010.

*William L. Reilly*, for appellant.
*Michael H. Cummings II*, for appellees.